THEODORE H. HINCHMAN, FORD D. C. HINCHMAN, JOHN M. HINCHMAN, AND CHARLES C. HINCH-MAN v. AMBROSE A. WEEKS.

*Sale—Fraud—Waiver—Commercial agency—Evidence—Directing verdict.*

1. The declaration in this case (see opinion) is held to be sufficiently specific to apprise the defendant of the plaintiffs' claim that he falsely and fraudulently represented his financial condition in making a report to Dun's Commercial Agency; that plaintiffs sold in reliance upon this report, which was false and untrue, and by means of which the plaintiffs were cheated and defrauded out of the value of the goods sold to defendant after such false and fraudulent representations were made.

2. It was held in *Morley v. Insurance Co.*, 85 Mich. 210, that the defendant must announce that he rests his case, before he can insist that the court should pass upon the question of the sufficiency of the plaintiff's testimony to establish his case, and that, until the defendant has so rested, the court has the right

and discretion to refuse to direct a verdict in favor of the defendant upon the claim that the plaintiff's evidence fails to establish his case. *Denman v. Johnston*, 85 Mich. 387.

3. The court charged the jury that to entitle the plaintiffs to recover they must prove, by a fair preponderance of evidence, that the defendant did make to the agent of Dun's Commercial Agency, on or about December 19, 1887, the statements he is charged in the declaration with having made, or some material part of them, which statements, or some material part thereof, were untrue in fact when so made, and that they were made with the intention and for the purpose of obtaining a standing thereby; that the agency communicated to the plaintiffs the statements so made to it by the defendant, and that they believed them to be true, and by reason thereof were induced to and did sell the goods to the defendant on credit, which they would not otherwise have done; which charge is held to have been as fair to the defendant as he had a right to ask, under the testimony in the case, and to be supported by *Bank v. Barge Co.*, 52 Mich. 164.

4. After the assignment of his property by an insolvent debtor for the benefit of his creditors, certain of his creditors, who had commenced an action against him to recover the value of goods claimed to have been sold to the debtor on credit secured by reason of his false and fraudulent statements as to his financial standing, filed a claim for their account under the assigment proceedings, in which they recited the fact of the pendency of said suit, and set forth fully the fraud practiced in obtaining the goods; which claim is held not to be a waiver of the claim made in said suit against the debtor.

5. In a suit by vendors to recover the value of goods secured by reason of the vendee's false and fraudulent statement to a mercantile agency as to his financial standing, the agent of the agency, to whom the statement was made, may testify as to the method of the agency in doing business in regard to collecting its reports; it being a matter proper to be inquired into, as are all of the facts and circumstances surrounding the making of the statement of the agent, and the manner in which the plaintiffs received their information as to the defendant's standing.

Error to Kent. (Grove, J.) Argued April 16, 1891. Decided May 8, 1891.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*McGarry & Ford,* for appellant.

*Peter Doran* (*Montgomery & Bundy,* of counsel), for plaintiffs.

LONG, J. This is an action of trespass on the case for fraudulent representations, by which it is alleged the defendant procured from the plaintiffs merchandise of the value of $1,202.61, and for the value of which they had verdict and judgment in the court below, less the dividend of 15 per cent. which had been paid by the assignee of the defendant. Defendant brings error.

The declaration states—

"That the firm of T. H. Hinchman & Sons [composed of the above named plaintiffs] are wholesale dealers in groceries, drugs, etc., in the city of Detroit, county of Wayne, and State of Michigan, and that they were thus engaged and have been since the 1st day of July, 1887, and that since said last-mentioned date, in the course of trade, the said defendant, Ambrose A. Weeks, became indebted to the firm of T. H. Hinchman & Sons, composed of the parties above named, in the sum of $1,202.61 for goods, wares, and merchandise sold and delivered by plaintiffs to the said Ambrose A. Weeks, defendant herein; and that said indebtedness was created and credit given by plaintiffs to defendant upon the basis that the statements and representations of defendant as to his financial responsibility, more particularly hereinafter referred to, were true in substance and in fact.

"That the said firm of T. H. Hinchman & Sons is a member of Dun's Commercial Agency, a company organized and existing for the purpose of collecting information as to the circumstances, standing, and pecuniary reliability of merchants and dealers throughout the country, and keeping accounts thereof, so that the subscribers of the agency, when applied to by customers to sell goods to them on credit, may, by resorting to the agency, or to the lists which it publishes, ascertain the standing and responsibility of the customers to whom its purpose is to extend credit.

"That on or about the 19th day of December, A. D. 1887, the said Ambrose A. Weeks, with intent to obtain

a standing and credit, and to extend information therefor, stated and represented to said Dun's Commercial Agency, its agents and servants, in substance, among other things, that he then had and owned a stock of goods, wares, and merchandise, and that he had made an inventory of such stock, which showed an amount of goods on hand amounting to $4,000 or thereabouts; that he then owned a house and lot, store and barn, at Grattan, in said county, for which he paid the sum of $3,550 or thereabouts; that he had that fall built an addition to his store building, and that it was filled with goods; that he then owed $1,500 on his residence, which was secured by a mortgage, which would mature a year from that fall, and that he had offered to pay up the mortgage, but the mortgagee would not take the money until it became due; that he also then owned 20 acres of land, worth $800 or thereabouts, which was free and clear from all incumbrances; that he had good accounts amounting to $400, and personal property worth $1,000, besides household goods, furniture, etc., which were valued at $2,500; that he then had notes and cash worth about $300; and that in July or August, 1886, his (the said Ambrose A. Weeks') wife gave him as a present a sum of $2,000, which she received from the estate of Thomas Byrne, with which he (the said Weeks) purchased a team of horses, which he used in his business,—making his gross assets, in round numbers, upwards of $10,000; and that his total sales during the two years he had been in the trade amounted to $21,000; that his liabilities consisted of a mortgage on his said residence of $1,500, and about $1,000 for merchandise.

"Plaintiffs further aver that the substance of such information was reported by said Dun's Commercial Agency to the said plaintiffs; and that the said plaintiffs, in making and continuing the sale of the goods to the said Ambrose A. Weeks after the making of such report, and especially during the time the goods for which the indebtedness in this action arose, relied upon the said statements so made to the said commercial agency, and believed the same to be true, and that such sales were made, and such credit granted and extended, upon the basis of such representations.

"Plaintiffs further aver that such representations were untrue in substance and in fact, and were known to be so by said defendant; and that afterwards, and on or

about the 29th day of December, 1888, the said Ambrose A. Weeks made a general assignment for the benefit of his creditors. And they, the said plaintiffs, allege that in the fall of 1887, and at the time of making such reports and permitting them to be spread abroad for the purposes aforesaid, the said Ambrose A. Weeks was owing to merchandise creditors between $1,200 and $1,500, and was owing to his wife the sum of $2,700, and was largely indebted otherwise; and that he then had on hand a stock of only about $2,600; and that the said Ambrose A. Weeks was at such time insolvent, and unable to pay his debts in full; and that, by means of such false and fraudulent representations upon the part of the said defendant, they, the said plaintiffs, lost and were wholly deprived of their said goods, wares, and merchandise, and became and were, and ever since have been, unable to secure, collect, or enforce payment for the same, or any part thereof, and lost and became deprived of the value thereof; to the great damage of them, the said plaintiffs, to wit, in the sum of $10,000. Therefore they bring suit."

There is also a count added in trover.

To the first count of this declaration defendant first interposed a demurrer, and claimed as causes for demurrer:

1. That it does not appear by the declaration that the defendant knew that the plaintiffs were members of Dun's Commercial Agency at the time the representations to the said agent were claimed to have been made.

2. That it does not appear by the declaration that the defendant knew that the person to whom the representations were made was in any way connected with Dun's Commercial Agency.

3. That it does not appear by the declaration that the representations made by the defendant were untrue in fact.

4. Because it does appear by the declaration that the only ground for the general allegation therein that said representations were untrue in fact is that defendant on December 29, 1888, made a general assignment for the benefit of his creditors.

5. Because it does not appear by the declaration that, by virtue of said assignment, said plaintiffs have been

unable to collect the amount due them, nor that the assigned property is not sufficient to pay off and discharge all the debts owing by the defendant.

6. Because it does not appear by the declaration that the plaintiffs did not have ample and ready means of ascertaining the truth or falsity of the representations when the merchandise was sold, or that they have made inquiry of the defendant regarding his financial condition.

Issue was joined upon the demurrer, and it was overruled. Error is assigned upon this ruling.

The cause was tried before a jury, and after the plaintiffs' proofs were closed the defendant demurred to the plaintiffs' proofs, and asked a direction to the jury to return a verdict for the defendant. This motion was overruled, to which defendant excepted. Exception is also taken to the introduction of certain evidence offered by plaintiffs, and also to the charge of the court as given.

It appeared upon the trial of the cause that the plaintiffs are wholesale druggists, doing business in the city of Detroit. The defendant was engaged in 1887 and 1888 in the retail drug business at Grattan, this State. The defendant had prior to that time purchased goods from plaintiffs, and his account was settled and closed, and the plaintiffs had instructed their traveling salesman not to extend credit for goods to the defendant. Plaintiffs were subscribers to Dun's Commercial Agency, and through such agency there came to their attention the statement claimed to have been made to such agency of defendant's financial standing and condition. Plaintiffs claim that thereafter defendant asked, and they gave him, credit for the goods in contention here, relying upon the statement contained in the report of Dun's Agency. It is claimed by the plaintiffs that this statement was made by the defendant to one Charles M. McWhorter, an agent

of R. G. Dun & Co., then stationed at Grand Rapids, and that the defendant came into the office of McWhorter on December 19, 1887, and made a statement, which McWhorter took down in writing and reported to the agency. This statement is as follows:

"A. A. Weeks, Drugs and Groceries, Grattan, Mich., Kent Co.

"Dec. 19, '87. Called and stated that he had built an addition to his store this fall, making it now 110 feet deep by 20 feet wide, and filled with goods. Inventory completed November 1 showed stock on hand $4,000 (a little over). Has it insured for $3,000. Owns house and lot, store and barn, which cost him $3,550. Store cost $1,200, and is paid for. Owes $1,500 on residence, secured by mortgage, which matures a year from this fall. Has offered to pay it, but mortgagee will not take the money. Store and house insured $2,000. Barn and contents insured $500. Owns 20 acres of land, worth $800, and free from incumbrance, which came to him upon division of his father's estate. Has good accounts amounting to $400, and personal property worth $1,000, besides household goods and furniture, etc., valued at $2,500, insured $400; notes, cash, etc., about $300,— making gross assets, in round numbers, $10,000, exclusive of house furniture. His liabilities consist of the mortgage on residence, $1,500, and about $1,000 for merchandise. Deducting $1,500 for homestead, and $250 for personal exemption, would show a margin of $5,750.

"About July or August, 1886, his wife, who is a sister of the late Thos. Byrne, received $6,633 from his estate, out of which she gave her husband a present of $2,000, purchased a team of horses, which he uses in his business, and invested the rest ($4,000) in real estate mortgages. She has now purchased a stock of dry goods amounting to $2,000, for which she paid cash, and is doing business in her own name, T. M. Weeks, in a part of her husband's store. They work together, employ a housekeeper, but no clerks, and keep their business separate. Weeks is postmaster, notary public, writes insurance, etc., and picks up a few dollars outside of his regular business. He informs us that his total sales during the two years he has been in trade amount to $21,000. Building the addition to his store absorbed his spare

means, so that, as he states, has been a little slow with some accounts lately. We have heard no complaints about him, stands well in this [Grand Rapids] market, and is sold his wants with confidence, but buys principally in Detroit."

It is claimed the goods were sold relying upon the truthfulness of this statement and that all that has ever been received upon them is $180.14, which was received of defendant's assignee; that, at the very time, his inventory of stock was but $2,600, and that he then owed his merchandise creditors from $1,200 to $1,500, and his wife $2,700, and at the time was insolvent.

Under the charge, which submitted to the jury the question of whether these statements were made; whether they were communicated to the plaintiffs; whether the plaintiffs believed the statements to be true; whether they sold the goods to defendant on the basis of such statements; whether the defendant knew, or had reason to believe, that his statements were false, or that they were recklessly made in a manner to import positive knowledge of their truth,—the jury found in favor of the plaintiffs, and returned a verdict against the defendant.

1. The court was not in error in overruling the demurrer to the declaration; and the declaration is sufficiently specific to apprise the defendant of the plaintiffs' claim that he falsely and fraudulently represented his financial condition in making the report to Dun's Agency; that they sold in reliance upon this report; and that the report was false and untrue, by means of which the plaintiffs were cheated and defrauded out of the value of the goods sold to defendant after such false and fraudulent representations were made.

2. The court was not in error in overruling the demurrer to the plaintiffs' proofs. It was held in *Morley v. Insurance Co., ante,* 210, that the defendant must announce

that he rests his case, before he can insist that the court should rule and pass upon the question of the sufficiency of the plaintiff's testimony to establish his case; and, until the defendant has so rested, the trial court has the right and discretion to refuse to direct the verdict in favor of the defendant upon the claim that the plaintiff's evidence fails to establish his case.

It is claimed by the defendant, however, that there is absolutely no evidence in this record tending to show that the plaintiffs were ignorant of the falsity of the defendant's statements, and believed them true, in so far as such statements are claimed to be false, or that the plaintiffs were unable to prevent the fraud; that the plaintiffs had, at the time they received the report from the commercial agency, a letter from the defendant himself, in which he purported to give a general statement of his business affairs; that this letter disagreed with the report as furnished by the commercial agency in every important particular, and substantiates the defendant's statement; that the plaintiffs knew that the commercial agency was not responsible for the correctness of the reports, and they had never called upon the commercial agency for the report; that plaintiffs had been dealing with the defendant from the time he had commenced business, and he had paid them large sums of money, and dealt with them fairly and honestly; that they knew, in making the statement to them in his letter, he would make it as favorable as the circumstances would allow; that the report of the commercial agency bore upon its face evidence of the opinion, speculation, and conclusion of the subagents of R. G. Dun & Co., hence they could not claim that they were unable to prevent the fraud; nor did they attempt to prove that they were ignorant of the falsity of the statements.

It is further insisted that, in order to obtain damages

in law for an injury caused by deceit, it must be shown that there was a false representation of material facts, made with knowledge of its falsity; that the injured party was ignorant of its falsity, and believed it true; and that it was made with the intent that it should be acted upon; and that it was acted upon by the injured party. It is claimed that the testimony in this case falls far short of showing some of these important and necessary elements, constituting the plaintiffs' claim and right to recover.

Under the charge of the court, we think these questions were fully settled by the jury, and that there was testimony sufficient to go to the jury to establish the plaintiffs' claim. It appears that the defendant visited the office of Mr. McWhorter on December 19, 1887, and was there told by him that he had heard something in regard to his (Mr. Weeks') business which made him wish to know what the facts were; that McWhorter then sat down at the table; the defendant seated opposite him at the other side of the table, then made the statement heretofore set out; that McWhorter at once forwarded this report to Dun's Commercial Agency at Detroit, from whom the plaintiffs, being subscribers thereto, received it. The defendant himself, as it appears from his testimony, had prior to that time been the reporter to this same agency, and knew the purpose for which this information was being obtained, and that, when a representation of that kind was made in regard to the financial condition and affairs of one engaged in commercial business, it was sent to the agency at Detroit and its various agencies, and that all subscribers to such agency obtained such information of the financial standing of the party so reported, and that this report was being obtained for the purpose of showing, through the agency, his financial condition. There was evidence, properly submitted to the jury, showing the falsity of this statement in many par-

ticulars, and we think sufficient to warrant the finding of
the jury that the statement was false, and that it was
made with knowledge of its falsity. We find nothing in
the record that the plaintiffs had any knowledge of its
falsity; but the testimony shows conclusively that they
believed it to be true, and relied upon it in making the
sales; and it is equally evident that the defendant, in
making this statement to Mr. McWhorter, who he knew
was an agent of Dun & Co., made it with full knowl-
edge that it would be reported to the agency, and would
be relied upon by parties of whom he might ask credit.

The charge of the court upon this branch of the case
was as fair to the defendant as he had a right to ask,
under the testimony given in the case. The court stated
to the jury as follows:

" The defendant's claim, as I understand it, is that he
did not make all of the representations imputed to him,
and that those of them which he did make were true;
that the representations were not made for the purpose
of obtaining credit, but were made incidentally in a
casual conversation.

" To entitle the plaintiffs to recover in this action,
they must prove, by a fair preponderance of evidence,
that the defendant did make to the agent of Dun's Com-
mercial Agency, on or about the 19th day of December,
1887, the statements he is charged in the plaintiffs'
declaration with having made, or that he made some
material part of them; that the statements made by the
defendant to the Dun Commercial Agency were untrue
in fact at the time he made them, or that some material
part of such statements were untrue, * * * and
that they were made by the defendant with the intention
and for the purpose of obtaining a standing thereby;
that the agency communicated to the plaintiffs the state-
ments so made to it by defendant; and that the plaint-
iffs believed such statements to be true, and by reason of
such statements were induced to, and did, sell goods to
defendant and give him credit therefor, and that they

85 MICH—35.

would not have done so had he not made such statements."

There is no error in this instruction. The doctrine so laid down by the trial court is fully supported by *Genesee Co. Sav. Bank v. Michigan Barge Co.*, 52 Mich. 164; *Eaton v. Avery*, 83 N. Y. 31; *Com. v. Call*, 21 Pick. 515; *Com. v. Harley*, 7 Metc. 462.

It appears that prior to the commencement of this suit defendant made an assignment, under the statute, of all of his property for the benefit of his creditors; that after this suit was commenced, and while the defendant's estate was being administered, the plaintiffs presented their account to defendant's assignee, and asked to be prorated with other creditors for the amount of their claim. They proved their claim, and filed it as a creditor of the estate, and, before the present suit was brought to trial, received a dividend thereon of 15 per cent. It was claimed by the defendant on the trial below, and it is claimed here, that this constituted a waiver on the part of the plaintiffs of any claim for damages for obtaining the goods by means of false representations. This raises the most important question involved in this controversy. The claim was made and sworn to by John M. Hinchman, one of the plaintiffs, on April 2, 1889. The claim is in the usual form of claims presented by creditors in case of assignment, and states that Weeks is indebted to the firm in the sum of $1,202.61, for and on account of goods, wares, and merchandise sold and delivered by T. H. Hinchman & Sons to him, and that the amount actually unpaid and owing is the above-stated sum; that the actual consideration thereof is the sale of the goods, wares, and merchandise at the dates, and for the prices and amounts, specified in the account; and a copy of the account is attached. It is further stated in the

claim that the indebtedness arose and accrued at or about the dates specified in the account, and became due immediately thereafter, and that no securities are held therefor.

Mr. Hinchman, in his statement of claim, then says:

"Deponent further says that the said T. H. Hinchman & Sons claim that the said good were purchased under and by virtue of false and fraudulent representations as to his financial condition, credit, and standing, and that the goods, wares, and merchandise mentioned in said account were purchased by the said Ambrose A. Weeks when in an insolvent condition, without intending to pay for the same, upon which representations aforesaid the said T. H. Hinchman & Sons relied at the time of the sale and delivery of said goods; and that by reason thereof the said T. H. Hinchman & Sons have caused an action to be brought in the circuit court for the county of Kent for trespass on the case, for the fraudulent purchase of said goods by virtue of said false and fraudulent representations, and without intent to pay for the same, upon the part of him, the said Ambrose A. Weeks.

"And this deponent therefore claims that the said Ambrose A. Weeks is indebted to the said T. H. Hinchman & Sons in the sum of twelve hundred two and 61-100 dollars ($1,202.61), aforesaid, for and on account of the purchase of goods, wares, and merchandise for the value stated in said account, by virtue of false and fraudulent representations as to his financial condition, credit, and standing, and without intent to pay for the same by him, the said Ambrose A. Weeks, and upon which the said T. H. Hinchman & Sons then relied; which said false and fraudulent representations were untrue in substance and in fact, and well known to be so by him, the said Ambrose A. Weeks."

The contention here is not that the plaintiffs, under this claim and statement, could not legally obtain their *pro rata* share of the dividend at the hands of the assignee in the assignment proceeding, but that, having received such dividend, the plaintiffs are now estopped from claiming that the goods were obtained from them by the defendant by false and fraudulent representations,

and that they have waived any right of recovery in the present action for the fraud, by the acceptance of the dividend. The court below instructed the jury upon that question as follows:

"In this connection, I ought to say to you, gentlemen, that in my judgment the fact that the plaintiffs presented the claim for allowance in the assignment proceedings in the manner in which it was presented, reciting the fact of the pendency of this action, and disclaiming any waiver, declaring that they did not waive their rights under the action then pending, cannot affect this suit in any way; and the matter is only to be considered by you in making the proper reduction of whatever was received upon that."

There was no error in this instruction. The question is not presented whether the plaintiffs had or had not the right to receive from the assignee this dividend, but whether, having made claim as a creditor, they waived their right to maintain this action for damages for the fraud practiced upon them. It is well settled that plaintiffs cannot maintain inconsistent positions; that they could not commence, prosecute, and maintain suit upon one theory, and then abandon that theory, and adopt another entirely inconsistent to the first, where the assertion of the latter would be a positive negation of the first. The present action is for damages for the fraud. The measure of their damages, however, would be the value of the property obtained by means of the fraudulent representations, with interest. The claim made and filed sets out the fraud by which these goods were obtained, and is in no sense a waiver of the claim made in the declaration in this case, but is entirely consistent with it, and sets out the fraud practiced in obtaining the goods for which claim is made before the assignee. Instead of being a waiver of the fraud, the claim asserts the fraud, and the fraudulent means used and practiced

by the defendant in procuring the goods. This was not a waiver of the claim made in the declaration, and the court was not in error in so directing the jury.

Some errors are claimed in reference to the admission of testimony by the court upon the trial. It is asserted that the court was in error in permitting the witness McWhorter to testify as to the method of doing business of the Dun Agency in regard to collecting reports. There is no error in this. It was a matter proper to be inquired into, as were all the facts and circumstances surrounding the making of the report to McWhorter, and the manner in which the plaintiffs received their information as to the defendant's standing.

There was no error in permitting the plaintiffs to show that they directed their salesman, prior to the time this report was made, not to call upon defendant, and their refusal to sell him goods prior to that date.

It is claimed that the court was in error in allowing the witness McWhorter to testify from and read to the jury the report claimed by him to be the original report made to R. G. Dun & Co. It appears that the statement taken by McWhorter was not read over to the defendant at the time it was made, nor signed by him; and the paper which the witness McWhorter had appears to have been a copy of the statement taken down by him from the defendant. But the witness testified, and claimed to state from his recollection, aided by the paper, just what the defendant said as to his financial standing. There was no error in this; but, if there was error, no exception was taken to the ruling of the court in permitting the witness to testify, and therefore it cannot be considered.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.