HENRY SILBERMAN AND DAVID SILBERMAN V. THOMAS MUNROE.

*Corporations—Annual reports—Falsity of statements—Sale—Rescission for fraud—Evidence.*

1. The reports of the financial condition of manufacturing companies, required by 3 How. Stat. § 4161b1, to be filed annually by such corporations with the Secretary of State and in the office of the clerk of the county in which the corporate business is carried on, were intended as a means of furnishing information to those dealing with the corporations; and persons so dealing with said corporations upon the strength of such reports, a knowledge of which is acquired through the usual channels, have the right to rely upon the fairness and honesty of the statements therein made.

2. The inventory filed by the receiver of an insolvent corporation, showing the aggregate value of the real and personal property which has come into his hands, is some evidence of the value of said property; citing *Rosenfield v. Case*, 87 Mich. 295.

3. In a suit against the receiver of an insolvent corporation to recover the value of goods alleged to have been fraudulently purchased by the corporation shortly before it suspended business, it appeared that the inventory filed by the receiver showed a shrinkage in value of $100,000 in personal property and $140,000 in real estate from the valuations placed upon such property by the corporation in its annual report filed eight months prior to the filing of the inventory. And it is held that it was a question of fact as to whether the discrepancy could be accounted for on the theory consistent with the honesty of the representations made in the report.

4. Three days after the last of the goods sued for were delivered, the corporation gave a chattel mortgage covering its entire plant, and two days later it suspended business. And it is held that, if the jury found that the annual report was false, they were not without warrant in finding that the mortgage was given in contemplation of a suspension of business, and that, even before the mortgage was given, it must have been known to the management that the business could not proceed, and that it would be beyond the power of the corporation to pay for the goods, and hence beyond its expectations.

Error to Muskegon. (Russell, J.) Argued November 1, 1894. Decided March 19, 1895.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*John Vanderwerp* (*Smith, Nims, Hoyt & Erwin*, of counsel), for appellant.

*Brown & Lovelace*, for plaintiffs.

MONTGOMERY, J.   This is an action of trover to recover the value of a quantity of scrap iron which came into the hands of defendant, as receiver of the Muskegon Iron & Steel Company, leave having been granted by the court to bring the suit.

It appeared on the trial that the plaintiffs were dealers in scrap iron, and in June, 1893, sold and shipped to the Iron & Steel Company three car-loads of scrap iron, which were delivered to the company, respectively, June 10, June 16, and June 23. On the 26th of June, a chattel mortgage covering the entire plant was given by the company, and on the 28th the company suspended business. On the 30th the defendant was appointed receiver. The plaintiffs subsequently demanded possession of the iron, claiming the right to rescind the sale on the ground that the purchase was made fraudulently; and this was based upon the claim that the company had made a false statement of its condition on the 25th of January, 1893, which formed the basis of credit, and that the purchase was made by the company knowing its insolvency and inability to pay for the property, and without any intent to pay for it. The return of the property being refused, this action was brought to recover its value. The plaintiffs recovered a verdict for the value of the property, and defendant brings error.

104 MICH.—23.

It is insisted that there was no sufficient evidence to justify the submission of the case to the jury. It appeared that the statement of the company made January 25, 1893, was made the basis of a report by the commercial agencies, which came to the notice of the plaintiffs and was relied upon. If the report was substantially untrue in fact, the question is ruled by *Emerson v. Spring Co.*, 100 Mich. 127. The January statement, which is required by 3 How. Stat. § 4161*b1*, and the neglect to furnish which renders the directors of the corporation liable in certain cases to a penalty and to the creditors of the corporation, was very clearly intended as a means of furnishing information to those dealing with the corporation; and when parties deal with the corporation upon the strength of such report, acquired through the usual channels, they have the right to rely upon the fairness and honesty of the statement. This statement showed that there was invested in real estate $201,645.68, and in personal estate $115,149.36; that the debts of the corporation amounted to $160,260.91, and its credits to $19,739.28. On the 28th of September, the defendant filed an inventory of the property which had come into his hands as receiver, showing an aggregate of real and personal property amounting to $78,502.16. In this inventory the real estate, which is shown to be the same owned by the company in January, was inventoried at $61,000, and the personal property at $17,502.16. The evidence shows that on the 26th of June, when the mortgage was executed under which defendant was appointed receiver on the 30th of June, the corporation was indebted about $142,000, showing a reduction of indebtedness after the 25th of January of $18,000, which it is fair to assume had been paid by realizing on credits and converting personalty. But this should have left on hand substantially $117,000. There was an apparent shrinkage, therefore, of

something like $100,000 in personalty and $140,000 in real estate.

It is insisted by defendant that there was no sufficient evidence to show a fraudulent overvaluation of property in the statement of January 25. But the inventory made by the defendant himself is clearly some evidence of value. *Rosenfield v. Case*, 87 Mich. 295. It is true the evidence shows that there has been some shrinkage in value resulting from a suspension of business. But can it be said, as matter of law, that this large discrepancy is no evidence to show that the statement of January 25 was untrue, that it had no such tendency, and that the case should therefore have been withdrawn from the jury? We think not. We are not prepared to say that a case might not be presented in which the court should say that the depreciation in value is so slight that, as matter of law, it should more properly be attributed to difference in judgment or the changed conditions than to a fraudulent purpose. In this case we are fully satisfied that there was some depreciation resulting from a suspension of business, and, if the difference were slight, the jury certainly would not have been justified in finding fraud, based upon a discrepancy in estimates of value made before and after the suspension. But this discrepancy is very great, showing a shrinkage in real estate of 69 per cent. in a few months, and we think it was a question of fact as to whether the discrepancy could be accounted for on a theory consistent with the honesty of the first representation, and the shrinkage in personalty was equally significant. See *Emerson v. Spring Co.*, 100 Mich. 127.

Upon the question of whether the company received the goods with intent not to pay for them, and knowing its own insolvency, if the fact is found that the statement of January was false, and that, within a very few days after the iron was received, a chattel mortgage was given cov-

ering the entire plant, the jury were not without warrant in finding that this was in contemplation of a suspension of business, and that, even before this mortgage was given, it must have been known to the management that the business could not proceed, and that it would be beyond the power of the corporation to make the payment, and hence beyond its expectations.

Some criticism is made upon the arguments of counsel, but we think we are not justified in disturbing the verdict upon this ground of complaint, under the circumstances of this case.

Finding, as we do, that there was evidence in the case justifying the submission of the case to the jury, we discover no fault in its submission, and the judgment will be affirmed, with costs.

The other Justices concurred.