DIME SAVINGS BANK v. FLETCHER.

FRAUD—AGENCY—CORPORATE OFFICERS—STATUTORY REPORTS.

> False statements of the condition of a corporate business, signed by an officer who was likewise secretary and director of the Fletcher Paper Company, defendant, which held stock in the corporation, were filed with the secretary of State. The complainant made a loan to the defendant Kenny, upon his note, accompanied by stock of the reporting corporation as collateral, relying on ratings obtained from mercantile reports that were made from the statement on file. Upon obtaining the loan the stock held by the Fletcher Paper Company was purchased by defendant Kenny, and the note being unpaid, the corporation becoming insolvent and its stock valueless, complainant filed a bill to have a trnst declared in the proceeds of the loan in the hands of the Fletcher Paper Company. *Held*, that the complainant is entitled to the relief prayed as for a fraud committed in behalf of the Fletcher Paper Company.

Appeal from Wayne; Rohnert, J.  Submitted May 3, 1909.  (Docket No. 1.)  Decided September 21, 1909.

Bill by the Dime Savings Bank against Allan M. Fletcher, the Fletcher Paper Company, and others, to cancel a loan obtained by fraud, for an accounting, and the establishment of a trust.  From a decree dismissing the bill, complainant appeals.  Reversed, and decree entered for complainant.

*Beaumont, Smith & Harris*, for complainant.

*Russel, Campbell, Bulkley & Ledyard*, for defendants Fletcher and Fletcher Paper Company.

BROOKE, J.  The bill in this case is filed to rescind and cancel a loan of $15,000 fraudulently procured to be made November 27, 1905, by the complainant to George F. Kenny; also, to cancel the notes given for said loan and to cancel an assignment of certain certificates of corporate stock deposited as collateral therefor; also, to declare the proceeds of the loan a trust fund in the hands of all defendants who received it, and to obtain an accounting therefor and repayment thereof; also, for discovery by defendants Allan M. Fletcher and the Fletcher Paper Company as to which of them finally received the money, or, if both received it, in what proportion.  The defendants Allan M. Fletcher and the Fletcher Paper Company filed a joint and several answer denying the material averments of the bill.  The defendant Beach filed an answer admitting some allegations of the bill and left complainant to its proofs as to the remainder.  A decree was entered dismissing the bill, from which decree complainant appeals.

The facts involved in controversy are, in brief, as follows:  Prior to November 14, 1905, the Fletcher Paper Company of Alpena was the owner of $15,000 par value of the stock of George F. Kenny Paper Company of Detroit.  The Kenny Paper Company was also acting as selling agent for the Fletcher Paper Company in market-

ing its products. The current indebtedness between the two companies varied from month to month, and the relations between the two companies were not entirely satisfactory to the Fletcher Paper Company in November, 1905. Kenny was slow in making remittances and settlements for the various papers shipped to his company by the Fletcher Paper Company. Mr. H. M. Campbell, counsel for the Fletcher Paper Company, advised it that it would be wise to investigate and see how the Kenny Paper Company stood. Consequently one Victor, the treasurer, and Allan M. Fletcher, the secretary, of the Fletcher Paper Company, on November 14, 1905, came from Alpena to Detroit for the purpose of making such inquiry. They went to the office of the Kenny Paper Company and took up with Kenny the general conditions of his business, and during the conference H. M. Campbell, their counsel, was called in. They insisted upon an examination of the books of the Kenny Paper Company, which Mr. Kenny refused to permit, giving various evasive reasons why such an examination could not at that time be made. Finally Kenny stated that, if the Fletcher Paper Company did not like the way he ran the business, he would buy its stock at par, $15,000, letting the Fletcher Paper Company collect a $3,000 dividend, and that he would sell the stock to some other people in the paper business. After some negotiations Kenny agreed to add the amount of the dividend to the purchase price of the Fletcher Paper Company stock, making the entire price $18,000. Thereupon an agreement was entered into between the Fletcher Paper Company and Kenny to the effect that he should pay $18,000 for the 1,500 shares of stock held by that company, on or before November 25, 1905. On Monday, the 27th day of November, Kenny sent over to Mr. Campbell a certified check for $18,000 and received in return the Fletcher Paper Company stock in the Kenny Paper Company indorsed in blank. It appears that between the 14th day of November and the 27th Kenny made application to the complainant for a

loan of $15,000 upon his individual note for that amount, to be secured by the $15,000 of stock in the Kenny Paper Company as collateral. This application was refused by the complainant upon the ground that the Kenny Paper Company was a close corporation and its stock not readily salable upon the open market. The complainant demanded, in addition thereto, an indorser, which indorser Kenny secured in the person of defendant Beach. After investigation of the commercial reports as to the financial standing of the Kenny Paper Company and Beach, the complainant accepted the loan, and on November 27th issued to Kenny its cashier's check for $15,000, payable to his order, receiving therefor two promissory notes of $7,500 each, payable, respectively, in two months and in four months, indorsed by Beach, and later the $15,000 par value of Kenny Paper Company stock indorsed in blank was deposited as collateral therefor with complainant.

At the time of negotiating the said loan, Kenny represented to the officers of the complainant that the stock he was about to purchase was really worth much more than par, to wit, about $4,000, that the business of the Kenny Paper Company was prosperous, and that it had a large surplus of assets over liabilities. These representations were shown upon the trial to have been absolutely false. The notes were not paid at maturity, and on the following January the Kenny Paper Company became insolvent, and its assets were wholly insufficient to meet its commercial liabilities, so that its capital stock was of no value whatever. Defendant Allan M. Fletcher, besides being the secretary of the Fletcher Paper Company, was the vice president of the Kenny Paper Company, and as such had signed an annual report of the George F. Kenny Paper Company, which was filed May 6, 1904, in which it was represented that he (Allan M. Fletcher) was the owner of $15,000 par value of the stock of said George F. Kenny Paper Company, that the amount of capital actually paid in in cash was $80,000, and that the then net value of its assets over liabilities

was upwards of $70,000. The complainant failed to protest the notes at maturity, thereby releasing defendant Beach, but thereafter Beach entered into a contract undertaking to pay the same and arranged with the bank to commence the present suit in its name but for his benefit. The suit was launched in the name of the bank by counsel for Beach; but Beach himself afterwards became insolvent, and it has been prosecuted on behalf of the bank.

At the time of the hearing in the court below, the complainant showed the false and fraudulent representations of Kenny in reference to the value of the stock, and that in making the loan it had relied in part upon said false representations. It showed, further, that in part it relied upon the statement of the commercial agencies which gave the Kenny Paper Company a rating of from $75,000 to $100,000; and, further, that said rating was based in part upon the report already noticed of said company filed with the secretary of State. It further showed that the said report was incorrect in several particulars, especially as to the amount of capital paid in in cash. The defendants offered the testimony of Victor, treasurer of the Fletcher Paper Company, and of H. M. Campbell, its counsel, to the effect that the defendant had no knowledge of the real financial condition of the Kenny Paper Company and made the sale of the $15,000 of stock in question in the ordinary course of business. The defendant Allan M. Fletcher was in court during the hearing of the case below, but was not placed upon the stand by either the complainant or the defendants.

The third ground urged by the complainant as the reason why it should prevail is as follows:

" Because the $15,000 was loaned to Kenny in part reliance upon the supposed truth of the Bradstreet rating of the Kenny Paper Company, which rating was based upon an untrue financial statement signed by Allan M. Fletcher."

Other grounds for relief are urged, but the foregoing is the only one considered by the court.

As before noted, the report set out that the capital stock of $80,000 was paid in in cash.   The record shows that in fact it was paid as follows:   Two post-dated checks aggregating $7,500;   notes of subscribers aggregating $22,500;  $25,000 was paid by the transfer of the physical assets of the paper business conducted by Kenny and $25,000 by alleged good will of that business.   Subsequently $7,500 of the $22,500 notes was paid; but when the company became bankrupt its reported assets consisted of $15,000 of the notes originally given for capital stock;  $7,500 of these notes were the notes of Kenny and were worthless;   $5,000 was the note of one Armstrong, and was given upon condition that it should be paid only out of the earnings.   It clearly appears from the record that the rating of the Kenny Paper Company given by the Bradstreet Company was based upon this report.   This report was obviously false and misleading. It was signed by Allan M. Fletcher as one of its directors and certified to by him as being—

"A true statement of the condition of the company, together with the names and addresses of the stockholders and the number of shares held by each."

We do not attach much importance to the fact that the report stated that Allan M. Fletcher was the owner of the 1,500 shares of stock in the Kenny Paper Company; whereas, in fact, the Fletcher Paper Company was the owner of 1,200 shares of the stock and 300 shares still stood in the name of Kenny, it being apparent from the record that the entire 1,500 shares were owned beneficially by the Fletcher Paper Company, and that the acts of Allan M. Fletcher in the premises were performed by him as its agent and for its benefit, for which it should be held accountable.   Representations made by a person in business to a commercial agency are presumed to have been made for the purpose of obtaining credit, and we are of opinion that the fact that the representations in the case at bar were made in the report to the secretary of

State, and thus indirectly to the commercial agency, is of no consequence.

See *Emerson* v. *Spring Co.*, 100 Mich. 127 (58 N. W. 659), where this court said:

"It sufficiently appears that Dun's reports were based upon the sworn reports of the company to the secretary of State, that both the plaintiffs in attachment extended credit upon the strength of these reports, and we are satisfied that these statements of the company were false and could have been made with no other purpose than that of establishing a false credit."

In *Silberman* v. *Munroe*, 104 Mich. 352 (62 N. W. 555), this court, in considering the same question, used the following language:

"The report (to the secretary of State) was very clearly intended as a means of furnishing information to those dealing with the corporation; and when parties deal with the corporation upon the strength of such report, acquired through the usual channels, they have the right to rely upon the fairness and honesty of the statement."

In *Genesee County Sav. Bank* v. *Barge Co.*, 52 Mich. 170 (17 N. W. 793), this court said:

"We think a person furnishing information to a commercial agency as to his means and pecuniary responsibility is to be presumed to have done so to enable the agency to communicate the same to persons interested for their guidance in giving credit to him, and, so long as such intention exists and the representations reach the persons for whom they were intended, it is immaterial whether they passed through a direct channel or otherwise, provided they were reported by the agency as made by the party."

In *Mooney* v. *Davis*, 75 Mich. 188 (42 N. W. 802, 13 Am. St. Rep. 425), the court said:

"We further think the testimony tending to show defendant Dudley's approval of these statements was so recent before the sale in question that he must be held bound thereby, or, at least, if there had been any material change in his financial standing after the statements were given,

he should have notified the agencies to whom the information was given, that persons with whom he had commercial dealings should not be misled as to the extent of the credit they might safely give. These agencies have become almost a necessity in the transaction of a commercial business, and the rules by which they are governed and the information they gather and impart are well known to business and commercial men generally, and such information is perhaps more frequently relied upon among such men than that obtained from all other sources, and the courts cannot shut their eyes to these facts, and the changes in Dudley's business relations we do not think were such as affect the question now under consideration. The responsibility and the amount of assets over liabilities available for business purposes, or from which money could be realized for the exigencies of business, were the important questions presented to the creditors, and upon which they made sale of their property."

See, also, *Hinchman* v. *Weeks,* 85 Mich. 535 (48 N. W. 790).

The record does not disclose under what circumstances the signature of Allan M. Fletcher was obtained to the false report to the secretary of State; nor, under the facts in this case, is it important whether the untruthful representations contained in said report were made by him with knowledge of their falsity or a careless disregard as to their truth or falsity. Such information is demanded by the law from corporate officers for the very purpose of affording the general public, or that portion of it about to enter into contractual relations with such corporation, with accurate and honest information respecting its financial standing. It must be presumed that all officers in making such representations know this fact. Stripped of all details, the situation is, in brief, as follows: The complainant, relying in part upon the false statements contained in the report to the secretary of State, made by an officer of the defendant, the Fletcher Paper Company, parted with $15,000 and received nothing in return; whereas, the Fletcher Paper Company, as a result of the

transaction, is the possessor of $15,000, for which it parted with nothing of value.

The decree of the court below will be reversed, and a decree will be entered in this court against the defendant the Fletcher Paper Company in accordance with the prayer of the bill of complaint.

Montgomery, Ostrander, Hooker, and McAlvay, JJ., concurred.