VER WYS v. VANDER MEY.

1. FRAUDS, STATUTE OF—FALSE REPRESENTATIONS—DEFENDANT NOT PERSONALLY BENEFITED—WHEN ACTIONABLE.

Under 3 Comp. Laws 1915, § 11983, where a false representation is made by one who does not derive any personal benefit from the resulting transaction, the representation, to be actionable, must be in writing over his signature.

2. SAME—CORPORATIONS — VERBAL REPRESENTATIONS — WHEN ADMISSIBLE.

Representations as to the credit of a corporation are within this statute; but if the action is brought against the corporation itself for fraud, verbal representations by its officers and agents may be shown.

3. SAME—REPRESENTATIONS IN ARTICLES OF INCORPORATION—WHEN ACTIONABLE.

Statements in the articles of incorporation of a corporation, being represented by the signers thereof as true, and being in writing and signed by them, *held*, to fulfill the requirements of this statute authorizing a suit against the signers individually, by any one relying upon the representations and extending credit to the corporation, if damaged thereby.

4. FRAUD—NATURE OF REMEDY—CORPORATIONS—FALSE REPRESENTATIONS IN DOCUMENTS ON FILE IN PUBLIC OFFICE.

The right of the public to rely upon the statements in the articles of incorporation on file in a public office or in the annual report of a corporation to the secretary of State is not affected by the fact that the question arises in an action at law rather than in a proceeding in chancery.

5. SAME—PROOF—SUFFICIENCY.

In an action against one of the original incorporators of a corporation for fraud and deceit based upon false statements in the articles of incorporation on file in a public office, and signed by defendant, where the record conclusively shows that there was not actually paid in in cash the amount set forth in said articles, and that the corporation was not possessed of property worth the amount therein set forth, which facts were known to defendant, *held*, sufficient to establish the fraud relied upon.

6. SAME—EVIDENCE—SUFFICIENCY.

Evidence, *held*, sufficient to warrant the finding of the court below that plaintiff relied upon said statements.

7. SAME—WEIGHT OF EVIDENCE.

*Held*, that the findings of the court below were not against the great weight of the evidence.

Error to Kent; Perkins, J. Submitted February 6, 1919. (Docket No. 97.) Decided July 17, 1919.

Case by Adrian L. H. Ver Wys against Thomas H. Vander Mey for fraud and deceit. Judgment for plaintiff. Defendant brings error. Affirmed.

*John M. Dunham,* for appellant.

*Taggart & Kingston,* for appellee.

This is an action on the case for fraud and deceit. The case was tried before the trial judge without a jury, and after hearing the evidence, the following findings of fact and conclusions of law were filed by him:

"I. That Adrian L. H. Ver Wys, the plaintiff, is a resident of the city of Grand Rapids, doing business under the name and style of Imperial Machinery Company; that defendant is one of the original incorporators of the Service Auto Wheel Company, a Michigan corporation.

"II. That for the purpose of completing its incorporation, the Service Auto Wheel Company filed its articles of association in the office of the county clerk for the county of Kent, on June 9, 1917; that the articles of association remained on file in said office until June 19, 1917, when they were copied into the records of the county clerk and mailed to Charles G. Turner, attorney for the corporation.

"III. That the articles of association show that the authorized capital stock of the corporation was ten thousand ($10,000) dollars and that of this amount, seventy-eight hundred ($7,800) dollars had been actually paid in at the time of incorporation, sixteen hundred ($1,600) dollars in cash and sixty-two hundred ($6,200) dollars in other property.

"IV. That defendant signed the articles of association and acknowledged same, and made affidavit in the articles that the property taken in payment for the capital stock had been actually transferred to the corporation and that the property was of the actual value of sixty-two hundred ($6,200) dollars.

"That defendant had paid in full for the shares of stock of the corporation subscribed for by him, and

that none of the other stockholders of the corporation had paid the amount of their subscriptions.

"V. That said affidavit was untrue in that the property taken in payment for the capital stock and claimed to be of the value of sixty-two hundred dollars ($6,200) was not worth to exceed the sum of twelve hundred ($1,200) dollars and that this fact was well known to defendant; that the amount of money paid for the capital stock was not the sum of sixteen hundred ($1,600) dollars, as stated in said articles, and was not to exceed ten hundred and eighty ($1,080) dollars, and that this fact was known to defendant when he signed and executed the articles of association and affidavit attached thereto.

"VI. That on July 12, 1917, the Service Auto Wheel Company filed a voluntary petition in bankruptcy in the United States district court for the western district of Michigan, and was on said day adjudicated a bankrupt; that the schedules filed in the bankruptcy matter were signed and sworn to by defendant, Vander Mey, who was secretary-treasurer of the corporation; that the schedules disclosed claimed assets of twelve hundred and seventy-eight dollars and ten ($1,278.10) cents and liabilities amounting to seventeen hundred and fourteen dollars and sixty-nine ($1,714.69) cents.

"VII. That prior to the incorporation of the Service Auto Wheel Company, plaintiff had sold supplies and material to defendant and his associates to the value of one hundred and seventy-seven dollars and eighteen ($177.18) cents; that of the amount so sold before the incorporation all but six dollars and sixty-five ($6.65) cents was paid prior to June 11, 1917.

"VIII. That on or about the ninth day of June, 1917, defendant went to plaintiff's place of business and requested plaintiff to grant credit to the corporation on his books and stated to plaintiff that he and his associates were now incorporated for ten thousand ($10,000) dollars, and that more than half of this amount had been actually paid in.

"IX. That on or about the day following the talk between defendant and plaintiff, plaintiff went to the office of the Kent county clerk and made inquiries relative to the records of the Service Auto Wheel Com-

pany in said office; that he examined the articles of association of the said corporation then on file in said office, containing the statements hereinbefore set forth; that plaintiff relied upon the statements contained in the articles of association as to the amount paid in and value of property received, and gave credit in reliance thereon; that between the time when plaintiff examined the articles of association and the date of the filing of the petition in bankruptcy by the corporation, plaintiff sold supplies and material to the corporation to the value of three hundred and four dollars and seventy-nine ($304.79) cents, and that credit was extended therefor to the corporation because of the statements and representations contained in the articles of association.

"X. That nothing was paid by the corporation to plaintiff on account of the goods sold to it, but that plaintiff proved his claim in the bankruptcy proceeding and received dividends therefrom amounting to thirty-eight dollars and five ($38.05) cents, leaving a balance of two hundred and sixty-six dollars and seventy-four ($266.74) cents.

"Conclusions of Law.

"I. The statements contained in the articles of association were material and were relied upon by the plaintiff in giving the credit in question. Plaintiff had a right to rely on the truth of such statements.

"II. That such statements were not true in fact and were in their effect a legal fraud upon the plaintiff. Defendant is a party to and is responsible for the fraud committed upon the plaintiff by having joined in the making and filing of the articles of association.

"III. The fact that defendant has as between himself and the corporation paid his stock subscription in full does not relieve him from liability to the plaintiff.

"IV. Plaintiff has been damaged by reason of the fraud and false representations in the articles of association made and executed by defendant as aforesaid in the amount of two hundred sixty-six dollars and seventy-four ($266.74) cents.

"V. Plaintiff is therefore entitled to a judgment for the said sum of two hundred and sixty-six dollars and seventy-four ($266.74) cents together with his costs to be taxed."

KUHN, J. (*after stating the facts*). Counsel for the appellant, discussing the various assignments of error urged in his brief, says that the principal propositions involved for the consideration of this court can be stated as follows:

(1) Can this action be maintained?

(2) Was there any fraud established?

(3) Are the facts found by the court contrary to the clear weight of the evidence, and is the judgment supported by the facts.

1. It is the contention of appellant's counsel that the trustee in bankruptcy, possessing the right to file a creditor's bill by virtue of the Federal statute, should be held to be the only person in a position to get the relief that the plaintiff seeks to obtain by this proceeding. To support this contention, the recent cases of *Grand Rapids Trust Co.* v. *Nichols*, 199 Mich. 126, and *Courtney* v. *Youngs*, 202 Mich. 384, are relied upon. In the case of *Grand Rapids Trust Co.* v. *Nichols* it is held that as the trustee in bankruptcy, under section 47 of the bankruptcy act of 1898, as amended in 1910 (36 U. S. Stat. 838, 840), is vested with all the rights of a judgment creditor on whose judgment execution is returned unsatisfied, the trustee in bankruptcy may maintain a suit in the nature of a creditor's bill against those who obtain corporate stock without payment. But a reading of these authorities does not disclose that this court held that the trustee alone could bring an action and that an action at law might not be brought by a creditor under circumstances such as are now before us. It is true that the plaintiff herein took part in the bankruptcy proceeding and in the election of a trustee and that he reduced the damages in this action by proving the claim in the bankruptcy court and receiving the dividends thereon. This action is the ordinary action on the case for fraud and deceit. Many such actions

have been brought in this State, and inasmuch as the methods employed to perpetrate fraud are infinite, there is a great diversity in the facts and situations to which the action has been held applicable.   Among others are cases of false representations as to the financial standing and responsibility of a person or a corporation made either to promote an advantageous sale of a worthless business, or an advantageous sale of stock in a worthless corporation, or to induce merchants or bankers to extend credit to an irresponsible or insolvent person or corporation, which would not have been extended had the true facts been known.   Where a false representation is made by one who does not derive any personal benefit from the resulting transaction, the representation, to be actionable, must be in writing over his signature, because of the provisions of section 11983, 3 Comp. Laws 1915, which declares that:

"No action shall be brought to charge any person, upon or by reason of any favorable representation or assurance, made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

It has been expressly held that representations as to the credit of a corporation are within this statute. See *Bush* v. *Sprague*, 51 Mich. 41; *Hubbard* v. *Long*, 105 Mich. 449.   If the action had been brought against the corporation itself for fraud, verbal representations by its officers and agents might be shown.   But the signers of the articles of association have also personally represented that the statements therein are true, and this representation, being in writing and signed by them, would seem to fulfill the requirement of the statute of frauds.   Hence, any one who has

relied upon these representations and extended credit to the corporation may, if damaged thereby, sue the signers of the articles individually. The only case in which this particular point has been touched on at all by this court is *Bush* v. *Sprague, supra.* There were two counts to the declaration in that case setting up two different theories. The first count charged a conspiracy to defraud plaintiff, in pursuance of which the defendants went through the form of organizing a corporation, stating in the articles of association that the capital stock was $50,000, of which $15,000 had been paid in, whereas in fact nothing had been paid in; also that defendants caused the statement to be made in the city directory that this corporation had a capital of $50,000 when it had none and its debts exceeded its assets; that one of the defendants told plaintiff that the business of the corporation was very lucrative and that it was paying large dividends, and that he had invested $1,400 in stock of the corporation; that other similar statements were made singly by the other defendants; that one of the defendants showed plaintiff a written, but unsigned, statement, which he claimed was copied from the corporation's books, showing the investment of considerable sums of money by each of the defendants, and large assets and profits; that plaintiff, relying upon these representations, did invest $2,000 in stock of said company, which money was kept by the defendants personally; that the corporation then gave a chattel mortgage on all its assets to secure pretended indebtedness. The second count alleged the organization of a real corporation, but charged that the defendants combined to defraud plaintiff by false and fraudulent representations, setting up substantially the same representations as were alleged in the first count except as to the fraud in the organization of the corporation, whereby plaintiff was induced to invest, etc. The

plaintiff was not required to elect the count he would
rely upon and the case went to the jury upon both and
resulted in a verdict for the plaintiff.   Defendants
sought a reversal on the ground that the representa-
tions relied upon were not in writing and signed by
the party to be charged.   This court was unanimously
of the opinion that the statute did not apply to the
case alleged in the first count, because the corporation
was there claimed to be fictitious and a part of de-
fendants' fraudulent course of action and the defend-
ants really made the false representations for their
own benefit.   The Justices were not in accord as to
whether the statute would apply in the case present-
ed by the second count.   Chief Justice GRAVES, who
wrote the first (and minority) opinion, thought it
would and that the testimony was not admissible un-
der the second count, and that therefore the case ought
to be sent back for a new trial.   Justice CAMPBELL
was of the opinion that this question was not before
the court, not having been raised by the assignments
of error, but that, even if it were, the statute would
not apply, because it was not some one particular
statement that was relied upon, but a concerted course
of action involving many separate acts and statements,
no one of which singly, perhaps, would be sufficient
to establish fraud, yet which, in combination, were
effectual to convey the impression that the corporation
was sound and prosperous, and that if the statute were
applied in such cases, it would be a most effective and
convenient cover for fraud.   Moreover, he called at-
tention to the fact that there *was* a written and signed
misrepresentation, saying:

"Here, then, is a case where the fraud was claimed
to have been begun by the signing and filing of false
assertions in the articles of association, which, it may
be remarked, would thus far at least, bring the case
within the terms of the statute, and justify the court
in refusing, as it did refuse, to charge that there

was no evidence of false representations written and signed."

Justice COOLEY did not discuss this question, but agreed with Justice CAMPBELL that the judgment should be affirmed, because no request was made in the lower court that the recovery be restricted to one count of the declaration and no error assigned on the failure to do so. Chief Justice GRAVES, in his opinion, referred to the articles of association as follows:

"Suppose it were claimed for the plaintiff, although it has not been, that the articles of association should be deemed as signed within the sense of the statute in question, the position, if true, would not help the plaintiff here. The whole testimony as to this point, including the articles, was abandoned to a promiscuous application, and was left to be considered under the second count no less than under the first. But the articles were not properly examinable at all as evidence of false representations under the second count, because, as already said, the corporation is there presented, not as being a fraud and a false representation, but as a body instituted lawfully, and to which the defendants sought to give a fictitious ability and credit."

His view, however (unless based on the theory that the second count admitted the payment of the $15,-000), would seem to overlook the point caught by Justice CAMPBELL that, even if a corporation was in fact organized by the articles, yet the money was not in fact paid in, and hence the positive statement in the articles that the money had been paid in was a false statement giving a "fictitious ability and credit" to the corporation. Justice CAMPBELL'S view seems to have been adopted by this court in more recent decisions—not that there are any instances in which recovery has been sought or allowed in this court in actions on the case for fraud based solely upon statements falsely made in articles of association, but dec-

larations may be found in a number of decisions as to the purpose of requiring the filing of articles of association and of annual reports of corporations in the county clerk's office, which declarations, though found for the most part in chancery cases, purport to be general announcements of the purpose of the requirement of the law and of the right of the public to rely upon the statements contained in the documents so filed. Thus, in *McBryan* v. *Elevator Co.,* 130 Mich. 122, 123, it was said:

"The wrong was done by the original incorporators in making a false statement as to the amount of stock actually paid in. The public, and creditors dealing with the corporation, had the right to rely upon this statement as true. * * * It would be a disgrace to the law if creditors dealing with the corporation in reliance upon these statements, which they examine in the public offices where they are on file, had no remedy. Justice and good morals require that they who make such false statements, whether they make them intentionally or, as in this case, recklessly, should respond in damages therefor."

It is true the portion of the opinion in which this language occurs was not necessary to the decision of the case and was not concurred in, though not dissented from, by the rest of the court. But the same rule seems to have been announced in the earlier case of *Moore* v. *Elevator Co.,* 122 Mich. 48, in which the following statements were made:

"The organization of this corporation was a fraud in law, if not in fact. As to the Schoonmakers and Hultgren it was a fraud in fact. The amount of property which they conveyed to the company, for which they received paid up stock to the amount of over $63,000, was not worth any such sum. It was a gross and fraudulent overvaluation, and known by them at the time to be such.

"The bonus subscribers had no knowledge or notice of the fraudulent character of the organization. They

relied upon Moore's connection with the corporation as a *bona fide* one. One of them, before subscribing, caused the articles of association, as filed in the county clerk's office, to be examined.   *   *   *

"Moore, by his act in subscribing for the stock, in being a director and president, held himself out to the public and to creditors as a *bona fide* stockholder, and as liable for the amount of stock subscribed by him."

That the above were chancery cases does not indicate either that the effect of filing articles of association with the county clerk as presenting to the public certain information and representations upon which they have a right to rely, is not the same in an action at law as in a chancery case, or that there is no remedy at law for a fraud of the kind here involved. Both happened to be chancery cases because of the nature of the relief sought. The first was a bill by a receiver to force the stockholders to pay the unpaid balance of their subscriptions. It was auxiliary to a judgment creditor's bill filed by a creditor of the elevator company. There is nothing to indicate that the creditor, when he found he had been misled by the false statements in the articles of association and had suffered damage thereby, might not have sued those who signed the articles in an action on the case for fraud and deceit. The creditor simply elected to take a different course, took a judgment in assumpsit for the debt and filed a judgment creditor's bill to reach the assets, which included these unpaid subscriptions. In the second case, one of the signers of the false and fraudulent articles of association was himself the complainant, having filed a bill to have his lien declared prior to the liens of the bonus subscribers, and the question of his liability on his subscription because of his false representation was presented, *as a matter of defense,* by the bonus subscribers. They very clearly might have brought an action on the case

against him for fraud and deceit. The right of the public to rely upon statements contained in annual reports of corporations on file in the county clerks' offices, is analogous, and this right has been clearly announced and upheld by this court in a number of decisions. In *Silberman* v. *Munroe,* 104 Mich. 352 (an action of trover), it was said:

"The report (to the secretary of State) was very clearly intended as a means of furnishing information to those dealing with the corporation; and when parties deal with the corporation upon the strength of such report, acquired through the usual channels, they have the right to rely upon the fairness and honesty of the statement."

And in *Dime Savings Bank* v. *Fletcher,* 158 Mich. 162 (35 L. R. A. [N. S.] 858), a bill to cancel a loan for fraud, it was said:

"Such information is demanded by the law from corporate officers for the very purpose of affording the general public, or that portion of it about to enter into contractual relations with such corporation, with accurate and honest information respecting its financial standing."

See, also, *First Nat. Bank of Ovid* v. *Steel,* 146 Mich. 308, where an action for fraud and deceit was based on false statements in the annual report of a corporation.

It is clear that the right of the public to rely upon these documents on file in a public office is not affected by the fact that the question arises in an action at law rather than in a proceeding in chancery. Mr. Justice CAMPBELL, in his opinion in *Holcomb* v. *Noble,* 69 Mich. 396, said:

"It is admitted that in equity an actual design to mislead is not necessary if a party is actually misled by another in a bargain. There was abundant evidence in this case to authorize the jury to find that defendant, whether honestly or dishonestly, expected

plaintiff to act on his representations of the reliableness of the reports which he produced, and that plaintiff did rely on them. There is no reason for a difference in action in such cases between courts of law and courts of equity. Where an equitable cause of grievance exists, it in no way differs from a legal one unless a different remedy is needed. A court of law cannot cancel a contract, and for such a purpose the equitable remedy must be sought. But where the relief desired is compensation for the wrong, the equitable remedy is much less appropriate, and an action in equity for mere damages will generally be denied, but denied only because the legal remedy is better. If there could be no legal remedy, there can be no doubt that equity would act. If the fraud is such that it creates a right of action anywhere, an action must lie on the case where a money judgment is needed."

The following were actions on the case for fraud and deceit, based on false representations as to credit and financial ability, resulting in loss to the plaintiffs: *Bush* v. *Sprague,* 51 Mich. 41; *Jones* v. *Kemp,* 49 Mich. 9; *Kryger* v. *Andrews,* 65 Mich. 405; *French* v. *Fitch,* 67 Mich. 492; *Hess* v. *Culver,* 77 Mich. 598 (6 L. R. A. 498, 18 Am. St. Rep. 421) ; *Hinchman* v. *Weeks,* 85 Mich. 535; *Hubbard* v. *Long,* 105 Mich. 442; *Banner* v. *Schlessinger,* 109 Mich. 262; *Third Nat. Bank of New York* v. *Steel,* 129 Mich. 434 (64 L. R. A. 119) ; *McDonald* v. *Smith,* 139 Mich. 211; *Getchell* v. *Dusenbury,* 145 Mich. 197; *Massey* v. *Luce,* 158 Mich. 128; *Steele* v. *Kellogg,* 163 Mich. 132; *Hubbard* v. *Oliver,* 173 Mich. 337; *Krolik* v. *Lang,* 187 Mich. 286; *Andrews* v. *Osius,* 203 Mich. 195. See, also, *St. Johns Nat. Bank* v. *Steel,* 135 Mich. 165; *First Nat. Bank of Ovid* v. *Steel,* 146 Mich. 308.

There is no ground for the claim that an affirmance of the judgment in this case would establish a new rule enlarging the liability of stockholders in corporations. It has nothing whatever to do with the liability of stockholders. It is the ordinary liability that

rests upon every person, whether stockholder or not, who makes a false statement as to a fact which he knows is likely to be relied upon by another in the way of extending credit, provided such other person actually does extend credit and suffers damage thereby. The liability is neither greater nor less because of the fact that the false statement happened to be contained in articles of association—that is a mere accidental circumstance so far as the ground of the action is concerned. It is not because the defendant made himself a stockholder by signing the articles that he is held responsible, but because he made false statements, over his signature, in those articles as to the amount of money paid in and the value of the property taken in payment for part of the capital stock. A false statement which causes loss to another relying upon it is not exempt from an action for fraud merely because it happened to be made in articles of association. Rather, one making a false statement there ought to be held the more strictly to account, for this court has constantly tried to impress upon those forming corporations that the public have a right to rely upon the statements they make in the documents relative thereto required to be filed and recorded in public offices for the information and guidance of those dealing with the corporation. The more solemn and formal the document, the more confidence will naturally be placed in its statements. If a person who becomes a stockholder by signing articles of association desires to avoid all chance of such a liability as this, let him see to it that the statements he signs in the corporate documents are true.

I am therefore of the opinion that the action was properly brought and that there is no merit in the first contention of appellant's counsel.

2. I am also of the opinion that there was sufficient

proof to establish the fraud relied upon, as found by the trial judge in his findings. The record conclusively shows that there was not actually paid in cash the amount set forth in the articles, viz., $1,600, and that there was not actually paid in cash to exceed the sum of $1,080, and it further appears that this fact was known to the defendant. Likewise it appears conclusively that the corporation was not possessed of property actually worth $6,200. I agree with the circuit judge that the testimony shows that the property was not worth to exceed the sum of $1,200. There is also sufficient testimony to warrant the finding of the judge that the plaintiff relied upon these statements in the articles of association in extending credit to the corporation after June 10th or 11, 1917, the date on which the plaintiff claims he examined the articles of association in the office of the county clerk.

3. The contention that the findings of the court are against the great weight of the evidence is based largely upon the statements contained in the affidavit filed by the vault clerk of the county clerk's office that on the day that the plaintiff claims to have examined the records in the county clerk's office the articles of association had not been actually recorded and that they were not recorded until June 19th, while the plaintiff testified that he examined the record books on either the 10th or 11th. It does appear, however, conclusively that the articles of association were on file in the office of the county clerk on June 7, 1917. The plaintiff testifies positively that he obtained his information in the office of the county clerk either on the 10th or 11th. There is apparently some discrepancy as to whether he saw the original articles or whether he examined the book in which they were supposed to have been copied. The trial judge, who had the benefit of hearing and seeing the witness, evidently believed that he was testifying to the truth

with reference to his statement that he saw the articles, and I am not impressed, upon reading his testimony, that the judge was not warranted in making the finding that he did. I am satisfied that there was sufficient evidence to justify the findings as made and that they are not clearly against the weight of the evidence, but are based upon competent and material testimony.

For this reason I am of the opinion that the findings as made should not be disturbed, and the judgment entered should be affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.