TEN EYCK *v.* PONTIAC, OXFORD & PORT AUSTIN RAIL-
ROAD CO.

1. RAILROADS—MORTGAGES—STOCK AND BONDS—MERGER.

One who, as attorney for a railroad company, the promoter
of which was H., negotiated a contract with an investment
company of which H. was president and chief stockholder,
by which the investment company was to construct the rail-
road, and receive for each mile thereof a certain amount of
the stock and mortgage bonds of the railroad, cannot, as a
creditor of the railroad, having known all the facts, insist on a
merger of the bonds and stock in the hands of H., who ac-
quired them through the investment company.

2. SAME—FORECLOSURE—STATUTES.

1 How. Stat. § 3351, authorizing railroad companies to execute
mortgages with such power contained therein for the sale
of the property mortgaged as shall, in the judgment of the
board of directors, be found expedient, and providing that
such power, and sale in accordance therewith, shall be valid,
operates to except railroad mortgages from the general stat-
ute relating to the foreclosure of real-estate mortgages.

3. SAME—PART-PAID STOCK—ASSESSMENT—ESTOPPEL.

A stockholder in a railroad corporation, who participated in
the issue of the stock as full-paid when in fact only a small
part had been paid, cannot, as a creditor of the corporation,
maintain a claim that the stock should be subject to assess-
ment to the extent to which it was unpaid.

4. SAME—NONRESIDENT DEFENDANTS—SERVICE BY PUBLICATION—
PERSONAL DECREE.

Such a claim on the part of the creditor is not aided upon
appeal from a decree against the railroad company and the
stockholders liable to such assessment by the fact that the
appeal was taken by the company alone, where such stock-
holders are nonresidents who were brought in by publica-
tion, and who did not appear in the suit.

5. SAME—PRIORITY OF LIENS.

A stockholder's claim against a railroad corporation for services
rendered in the construction of the road is not entitled to
priority over a mortgage given with the approval of such
stockholder prior to the rendition of the services.

Appeal from Oakland; Smith, J.    Submitted April 13, 1897.    Decided October 1, 1897.

Creditor's bill by Junius Ten Eyck against the Pontiac, Oxford & Port Austin Railroad Company, the Farmers' Loan & Trust Company, and others.    From a decree for complainant, the defendant companies appeal.    Reversed.

*Griffin, Warner, Hunt & Berry* (*Alfred Russell,* of counsel), for complainant.

*Aug. C. Baldwin* (*Russel & Campbell,* of counsel), for appellants.

MONTGOMERY, J.    In 1879, eight persons, of whom complainant was one, organized the Pontiac, Oxford & Port Austin Railroad Company, with a nominal stock of $1,500,000 in $100 shares.    Each of the eight persons subscribed for one-eighth of the shares, and paid in one-eighth of the sum of $2,500, which was all the money ever paid in.    The eight persons became the directors.    Joseph P. Hale was promoter of said railroad, and was president and chief stockholder of the New York, New England & Western Investment Company, an Illinois corporation.    The railroad company made a contract with the investment company by which the railroad was to make a mortgage to the Farmers' Loan & Trust Company of New York, and turn over the mortgage bonds and the stock to build the railroad.    In 1882 the railroad company, in accordance with the stipulation to that effect in the above-named contract, made a mortgage to secure 1,500 $1,000, 30-year, 6 per cent. bonds to the Farmers' Loan & Trust Company of New York, and authorized the trustee to issue all the certificates of stock and all the bonds of the railroad, and to deliver the same to the investment company, as fast as five-mile sections of the railroad should be completed, at the rate of $15,000 a mile of bonds and $15,000 a mile of stock, nominally full-paid.

By the contract between the railroad company and the investment company it was provided that the trust company should prepare not only the mortgage bonds, but certificates of the railroad stock, and issue to the investment company $15,000 bonds and $15,000 stock for every mile completed, and that the railroad company should procure $90,000 of subsidy notes and certain rights of way, etc.; and the complainant, as an individual, undertook to do this, and did it, and also performed professional work as an attorney, and for these different sorts of labor recovered a judgment against the railroad company in the Oakland circuit, which judgment was affirmed by this court (*Ten Eyck* v. *Railroad Co.*, 74 Mich. 226, 16 Am..St. Rep. 633), and now amounts to over $30,000.

Hale made loans to the investment company upon the said stock and bonds as collateral, and, the said company failing and going out of existence, Hale took up the work of construction. Before completion, Hale died, in 1883, and Lucy Ann Hale, his widow, and George W. Debevoise became executors, and finished the work, and, in 1886, 14,985 shares of the stock and all of the bonds came into their ownership and possession. Eight qualifying shares of the stock were held by the original eight directors, and seven shares by their seven successors. The cost of building the road was $1,430,000, or $70,000 less than the amount of the 1,500 $1,000 mortgage bonds received for building, leaving the bonus of 14,985 shares of stock besides in the ownership of the executors, nominally fullpaid, but actually paid up only to the extent of $2,500. Complainant, March 6, 1888, took out execution, returnable March 27, 1888, and the same was returned unsatisfied March 28th. Afterwards he levied a *pluries* execution on all the railroad property, and the levy was duly recorded May 8, 1889. The company having defaulted in payment of interest, the executors called upon the trustee, the Farmers' Loan & Trust Company, to take possession, and foreclose by advertisement, The trustee did this, and

put James Houston in possession as trustee's agent, and inserted an advertisement of sale for June 15, 1889, in two Philadelphia, two New York, and two Detroit papers.

Complainant filed the creditor's bill in the present case May 22, 1889, for himself and other creditors, if any, and in aid of execution, and to set aside the mortgage foreclosure, and to assess the stock, setting forth the foregoing, and praying a preliminary and final injunction against the sale, and also prayed the appointment of a receiver, and the sequestration of the stock, and general relief. Application for a preliminary injunction was granted on, condition of filing a bond of $2,000. The complainant decided not to file a bond, and the sale took place. At the time of the sale, which was conducted by Mr. Houston, complainant made a protest, and stated his claim and lien, and forbade the sale. C. H. Stone, son-in-law of Lucy Ann Hale, executrix and defendant, George W. Debevoise, executor and defendant, and Hugh Porter, attorney of the Hale estate, bid the property in, and organized a new company pending this suit, under the general railroad law (article 1, § 2; 1 How. Stat. § 3314), with $1,000,000 capital stock in shares of $100 each, all of which stock was issued to the executors, Mrs. Hale and Debevoise, defendants.

The defendants railroad company and trust company, who are the appellants, answered the bill. The executors, Mrs. Hale and George W. Debevoise (formerly president and superintendent of the railroad and secretary of the investment company), were brought in by publication, and made default. The case was tried in open court, and the relief prayed was granted, and the court decreed that, the bonds and stock being vested in the same persons, to wit, the said executors, the bonds were merged in the stock, in the view of equity, and considered as paid as against the complainant, and that said foreclosure was had in bad faith, and was also void for legal defects, viz., want of publication in the counties through which the railroad passes, not stating amount claimed to be due, nor

114 MICH.—32.

page of record, nor record in any county except Oakland, nor filing with the proper officer, and that the time of the publication was two days short of the twelve weeks required by law. The court also decreed that the complainant's claim was founded upon services rendered and property furnished which enhanced the value of the security, and inured to the benefit of the mortgagees, and was, therefore, entitled to priority of payment. The court also decreed sequestration of the stock, property, things in action, and effects of the railroad company, and appointed James Houston receiver, with bond, and power to proceed against the Pontiac, Oxford & Northern Railroad for possession, or to file bill for same, and sell free from the lien of the mortgage, and with power to assess the stock and collect the amount remaining due in order to pay complainant's judgment or any other debts. The railroad company and trust company appeal.

1. The first question presented is whether the bonds secured merged in the stock. It is plain that, if it is to be held that there was a merger, the holding must be based, not upon the intent of the parties, but upon some rule of law by which a merger takes place under the circumstances presented, though the parties do not intend or desire it. From the first Hale and his successors have assumed the relation to the railroad company of stockholders, and the railroad company was treated as a distinct entity, and as such made the construction contract with the construction company, another distinct entity. The bonds were issued in pursuance of the terms of this contract, and were secured by mortgage. Whatever may have been the motive of the parties, it is evident that the purpose was to maintain two corporations, separate and distinct, and that Mr. Hale, as the holder of the bonds, should have the same right as would a stranger to the railroad company. That there may not be circumstances which justify courts in treating the formation of a construction company by the stockholders of a railroad company, and the making of a contract with such construc-

tion company which practically vests the railroad fran-
chise, stock, and property in such company, as a fraud,
we by no means intimate.    On the contrary, if a creditor
of the railroad company, who became such in ignorance
of the fact, were before this court, we should hesitate long
before denying relief against the manipulators of this
scheme.    But, as before stated, merger in this case must
be based upon some ground other than the intent of the
parties to the transaction.    It may be stated as a gen-
eral rule that merger does not take place when the
interest of the mortgagee does not require it, and when
there is no intent that there should be a merger, and
when there is none in fact by a union in the same
person of the title and mortgage interest.    *Snyder* v.
*Snyder*, 6 Mich. 470; *Cook* v. *Foster*, 96 Mich. 610;
*Cooper* v. *Bigly*, 13 Mich. 478.    If there be any apparent
exception to this rule, it must be when a mortgagee is
seeking to avoid merger for the purpose of defeating one
who has superior equities, and as to whom it would be a
fraud to assert the continued existence of such mortgage.
Unfortunately, the complainant does not occupy that posi-
tion to these mortgagees.    Complainant testifies that he
himself acted for the railroad company in making the
contract with the construction company by which it was
agreed to give $15,000 per mile in bonds and a like
amount in stock for construction; that he in fact negoti-
ated the transaction.    By the terms of the agreement, the
stock was to be issued as the building of the road pro-
gressed.    It is the theory of complainant's bill that this
contract was, in effect, a contract by Hale with himself;
yet complainant participated in and negotiated the con-
tract which in form recognized the rights of Hale as a
stockholder in the two companies as distinct.

2. It is claimed that the foreclosure was had in bad
faith, for the purpose of cutting off the complainant; but,
if the lien of the mortgagee was prior to any right of levy
of complainant, it is difficult to conceive how a lawful
sale impaired his right.    A levy and sale by him would,

it is true, have enabled him to take the property subject to the mortgage, but foreclosure might have been had at any time.

3. It is further contended that the foreclosure sale is invalid, for the reason that the statute relating to the foreclosure of mortgages of real property was not followed. 1 How. Stat. § 3351, authorizes the execution of mortgages by railroad companies with such power contained therein for the sale of the property mortgaged or deeded as shall, in the judgment of the board, be found expedient; and such power and sale in accordance therewith shall be valid. The record shows that the power contained in the mortgage was followed. The special provision above quoted operates to except railroad mortgages from the general statute relating to the foreclosure of real-estate mortgages. See *Hammock* v. *Trust Co.*, 105 U. S. 77.

4. Should this stock in the hands of the executors of Hale be held subject to assessment for any unpaid portion thereof? As we have seen, the contract between the railroad company and the construction company was negotiated on behalf of the railroad company (in part, at least) by complainant. In *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226 (16 Am. St. Rep. 633), the right of this plaintiff to recover was rested, in part, upon the proposition that the stockholders, who were also directors, could not question the regularity of the plaintiff's employment, for the reason that they could not be heard to complain, as stockholders, of their own action as directors. If the same rule be applied to complainant in this proceeding, it would seem to follow that he, having participated in the issue of the stock of the corporation as full-paid stock, should not now be heard to complain of this action, or to assert that it was a fraud upon creditors. In *Arkansas, etc., Canal Co.* v. *Farmers' Loan & Trust Co.*, 13 Colo. 587, it was held that, where all the shareholders of a corporation participate in issuing fictitious stock as full-paid, the corporation cannot thereafter complain.

It is said that, as the shareholders who would be

assessed have made default, and have not appealed from the decree, they cannot be heard to complain in this court. Service was had by publication, and they are before the court only to the extent that property interests are involved.

5. It cannot be held that this is a preferred lien, entitling the complainant to priority over the mortgage. The mortgage was given with the approval of the complainant, and his services were rendered with full knowledge of its execution. When a railway passes into the hands of a receiver, and thereby the receipts, which would, it is to be assumed, have been devoted to the payment of operating expenses, are devoted to the payment of interest on a bonded debt, the courts have, in some instances, preferred claims of creditors whose demands are for operating the road, and which have arisen within six months prior to the receivership; but this is the limit of the rule, and preference in favor of creditors whose claims accrued in construction is not allowed. *Porter* v. *Steel Co.*, 120 U. S. 671; Jones, Corp. Bonds, § 589. Whatever of seeming hardship there may be in the complainant's present situation is traceable, as we have seen, to his own assent to the transactions which have culminated in subordinating his claim to that of the bondholders.

The decree will be reversed, and the bill dismissed.

The other Justices concurred.