GRAND RAPIDS TRUST CO. *v.* NICHOLS.

1. BANKRUPTCY—RIGHTS OF TRUSTEE—STATUTES.

   Under section 70, 30 U. S. Stat. 565, providing that the trustee shall be vested by operation of law with the title of the bankrupt to all property of the latter not exempt, as of the date of adjudication, including property transferred by him in fraud of creditors, and section 47 of the bankruptcy act of 1898, as amended in 1910, 36 U. S. Stat. 838, 840, providing that trustees, as to property coming into custody of the bankruptcy court, "shall be deemed vested with all the rights, remedies and powers of a

creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied," a trustee has all the rights of the bankrupt in the bankrupt's property and also all the rights of a creditor who has taken all the steps preliminary to filing a creditor's bill.

2. CORPORATIONS — OWNERSHIP OF CAPITAL STOCK — RIGHTS OF CREDITORS.

The capital stock of a corporation is property of the corporation, and the directors, promoters, and managers of the corporation may not, as against creditors, fraudulently convey it away.

3. SAME—JUDGMENTS—RIGHTS OF CREDITORS.

A creditor of a corporation whose claim has been reduced to judgment upon which execution has been issued and returned *nulla bona* may file a creditor's bill where the facts justify it.

4. BANKRUPTCY—RIGHTS OF TRUSTEE—STATUTES.

A trustee in bankruptcy of a corporation, under section 47 of the bankruptcy act of 1898, as amended in 1910, 36 U. S. Stat. 838, 840, giving him all the rights of a creditor who has taken all the steps preliminary to filing a creditor's bill, may file a creditor's bill to reach assets of the corporation fraudulently conveyed.

5. SAME.

Although a creditor's suit pending and undisposed of would be suspended by section 11a of the bankruptcy act of 1898, 30 U. S. Stat. 549, and the discharge of the bankrupt would release him from the debt, the right of a trustee to maintain a creditor's bill to reach property fraudulently conveyed, under section 70 of the act as amended in 1910, 36 U. S. Stat. 838, 840, is not affected.

6. SAME.

The fact that all the creditors do not participate in a fund does not prevent a trustee in bankruptcy from reducing a fund to his possession, for the benefit of those entitled to share in it, in an equitable suit to reach assets of a corporation fraudulently conveyed, as the court can guard the rights of all parties.

Appeal from Kent; McDonald, J. Submitted October 5, 1917. (Docket No. 32.) Decided December 27, 1917.

Bill by the Grand Rapids Trust Company, trustee in bankruptcy of the Grand Rapids Motor Truck Company, against Fred I. Nichols and others for a discovery and an accounting. From an order denying motions to dismiss, defendants appeal. Affirmed.

*Thomas P. Bradfield*, for plaintiff.

*Butterfield & Keeney* and *Charles B. Blair*, for defendants.

In March, 1912, the Grand Rapids Motor Truck Company was organized under the laws of this State with $350,000 common stock and $250,000 preferred. It took over the assets of the Decatur Motor Truck Company, an Indiana concern. Its articles of association enumerated, as required by the statute, property paid in and its value. Among the property paid in was a patent valued in the articles of association at $249,629.02, and for this amount of common stock one M. E. Brackett, trustee, subscribed to the articles. At or about the time of the organization of the company some 21 business men of Grand Rapids underwrote and guaranteed the sale of $100,000 preferred stock. With each share of the preferred stock was given one share of common, which was supplied by the stock subscribed by Brackett, trustee. This was the arrangement with the underwriters and others who subscribed for or purchased preferred stock, and it was carried out. The underwriters in the main complied with their underwriting agreement, paid the amount they had agreed, and took their stock pursuant to the above arrangement. In July, 1913, the Grand Rapids Motor Truck Company was adjudged a bankrupt, and plaintiff was appointed trustee. This

bill was filed by it against the defendants, 64 in number, some being underwriters and some not, some being subscribers to the articles of association, and some not, some having paid the company in full for their preferred stock, and some not. In this bill the foregoing facts appear, and it is alleged that the debts of the company amount to $120,000, and that debts aggregating nearly $116,000 have been proven, to meet which the trustee has but $8,500, which it holds in cash. It is alleged in the bill that the patent turned in to the company for $249,629.02 was of little or no value, "purely imaginary and speculative"; that such value so fixed in the articles of association "was recklessly excessive and extravagant, and was not an actual good faith valuation and was a fraudulent attempt to evade the requirements of the statutes of Michigan."

It is alleged that no consideration passed from the said Brackett, trustee, to the company for such common stock; that he was a "man of straw," through whom the plan of giving a share of bonus common stock with each share of preferred was executed. It is alleged that creditors, not all of them, extended credit to the company, relying on the capital stock of the company, and that the handling of the stock of the company, as above stated, worked a fraud upon such creditors.

The bill seeks discovery, an accounting by defendants for all stock received by them, and payment by them of the amount found due on such accounting for both preferred and common stock up to the amount that may be necessary to liquidate the claims of those creditors who have extended credit on the faith of the capital stock of the corporation and who have been defrauded. The bill also contains a prayer for general relief.

Thirteen of the defendants moved to dismiss the bill, which was an amended one. The motion having been overruled, and leave to answer given, we allowed an appeal to bring up this interlocutory order.

FELLOWS, J. (*after stating the facts*). By this motion to dismiss these defendants assail the right of the trustee under the bankruptcy law to maintain this suit. It is insisted that the bankrupt corporation could not maintain a suit against these defendants on the facts alleged, that the trustee has no greater right than the bankrupt had, and that, all creditors not being affected alike, the trustee may not institute suit for the benefit of a part of them.

We may lay aside that line of authorities which holds that the trustee in right of the bankrupt may not proceed against stockholders of corporations to recover beyond the agreed price of the stock. These cases are based upon the doctrine that the corporation, no creditor's rights intervening, may lawfully sell its stock for less than par, and is bound by its contracts entered into with reference to the sale of its capital stock, as it would contracts with reference to the sale of other of its property, and that it and the trustee, acting in its rights, will be bound by its contract. Unless the trustee, when creditors' rights intervene, has been given by the bankruptcy law other rights than those enjoyed by the bankrupt in its own right and for its own benefit, then the inquiry ceases, and the bill must be dismissed. We therefore address ourselves directly to the inquiry: What rights did the trustee acquire upon its appointment? This involves an examination of the bankruptcy law. Section 70 of the act of 1898 (30 U. S. Stat. 565), provides:

"The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be

vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trademarks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him; * * * (6) rights of action arising upon contracts or from the unlawful taking or detention of, or injury to, his property."

But by the amendment of 1910 (36 U. S. Stat. 838, 840) the rights of the trustee were materially enlarged. By this amendment section 47 was made to read, the portion within the brackets being the added matter:

"Trustees shall respectively *· * * collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest [and such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied]."

The purpose of this amendment is apparent, especially to one who follows the trend of judicial decision up to the time of its adoption, or who examines the holdings of the courts as to the rights of the trustee before its enactment. Trustees who were appointed prior to this amendment were hampered and had lim-

ited rights in setting aside conveyances or transactions of the bankrupt. This condition grew out of the limited rights conferred upon the trustee by the act of 1898, and was made patent by numerous decisions of the courts in construing such rights. While it is unnecessary to resort to legislative documents to reach a construction of this amendment, it is interesting to note that the judiciary committee of the house of representatives, in its report on the bill making this and other amendments to the bankruptcy law (Report 511; 61st Congress, 2d Session, p. 6), indicated very clearly that it was designed to meet the holding of the court in *York Manfg. Co.* v. *Cassell*, 201 U. S. 344 (26 Sup. Ct. 481), a case much relied upon here, and kindred cases.

This trustee therefore, when he was appointed in 1913, had the rights which the bankrupt had, he had the right to pursue property transferred by the bankrupt in fraud of his creditors, a right not possessed by the bankrupt, and he also had the rights of a creditor "armed with process"—all the rights of a judgment creditor holding an execution duly returned unsatisfied; in other words, he had all the rights of a creditor who had taken all the steps preliminary to filing a creditor's bill. It will therefore be seen that the decisions of this and other courts with reference to the rights of the trustee under the act of 1898 before the amendment of 1910 do not fix the rights of the trustee under that amendment.

It has frequently been remarked that the capital stock and property of a corporation will be regarded as a trust fund for the payment of its debts. Writers and courts have thought that at times this expression was loosely used. It is not necessary to analyze the propriety of the use of this expression to a given state of facts, and it will suffice for the purposes of this case to say that capital stock of a corporation is property

of the corporation, and the directors, promoters, and managers of a corporation may not, as against creditors, fraudulently convey it away.   That a creditor of a corporation whose claim has been reduced to judgment upon which execution has been issued and returned *nulla bona* may file a creditors' bill, if the facts justify it, is beyond question in this State. *Turnbull* v. *Lumber Co.,* 55 Mich. 387 (21 N. W. 375) ; 3 Comp. Laws 1915, §§ 12302, 13580 *et seq.*   The trustee in bankruptcy now having the same rights as such a creditor may also file a creditors' bill in the courts of this State.   This is a right given the trustee by the amendment, and it should not be taken from him by the argument pressed upon us that creditors may pursue such remedy.   If the argument of counsel is sound and the trustee may not file a creditors' bill, in a great majority of cases there would be no remedy, because neither could the creditor.   Rarely have creditors before adjudication of bankruptcy proceeded to judgments and had executions issued and returned unsatisfied, a necessary preliminary to the filing of a creditors' bill.   *Grenell* v. *Ferry,* 110 Mich. 263 (68 N. W. 144) ; *Strelow* v. *American Color Co.,* 162 Mich. 709 (127 N. W. 716).   If a suit was pending and undisposed of, it would be stayed by operation of the bankruptcy law (section 11*a*, act 1898, 30 U. S. Stat. 549 [U. S. Comp. Stat. 1916, § 9595]), and after the discharge of the bankrupt he could not be sued for a debt which his discharge released him from.   Such a right as appellants insist creditors possess would be but a naked right without a remedy.   Such a right which the bankruptcy proceedings prevent the creditor from enforcing does not take from the trustee the rights given him by this amendment.   To so hold would permit assets which equitably belong to creditors to remain as a practical matter beyond the reach of both trustee and creditor.   The trustee is the rep-

resentative of all the creditors, and therefore he is the representative of each.

The fact that all creditors do not participate in the fund does not prevent the trustee from reducing the fund to his possession for the benefit of those entitled to share in it. In an equitable proceeding, such as this, the court can carefully guard the interests of each and every party.

Other questions are presented in these motions to dismiss, but we think that under *Osborn* v. *City of Ann Arbor,* 189 Mich. 96 (155 N. W. 1102), and *Comstock* v. *Deane,* 197 Mich. 388 (163 N. W. 916), we should not dispose of them on this record, and therefore do not pass upon them.

The order denying the motion to dismiss will be affirmed, with costs to the plaintiff, and appellants will have 15 days to answer.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.