COURTNEY v. YOUNGS.

1. BANKRUPTCY—TRUSTEE, ACTION BY—PROCESS—PRACTICE.
    The service upon defendant stockholder of a bankrupt cor-
    poration by registered mail of an order by the referee in
    bankruptcy authorizing and directing the trustee in bank-
    ruptcy to bring suit unless the amount adjudged against
    defendant was paid within 10 days, is recognized as the
    proper practice.

2. SAME—RES ADJUDICATA—DEFENSES.
    While such order is determinative of the amount of indebt-
    edness of the bankrupt, and of the amount necessary, in
    addition to the other assets, to liquidate such indebted-
    ness, and authorizes the bringing of a suit in the proper
    forum, it is not *res adjudicata* of any defenses personal to
    defendant, and does not foreclose him from such defenses
    as he may see fit to make.

3. SAME—LIMITATION OF ACTIONS.
    In a suit by the trustee in bankruptcy upon such order, the
    statute of limitations is not available as a defense, since
    it did not begin to run until the order of the referee was
    made.

4. SAME—TRUSTEE, RIGHTS OF.
    Under the bankruptcy law, the trustee in bankruptcy has
    the rights of the bankrupt, and in addition has the right
    of pursuing property conveyed by the bankrupt in fraud
    of creditors.

5. SAME — CORPORATIONS — STOCK AND STOCKHOLDERS — SALE OF
    STOCK.
    Where creditors' and other stockholders' rights were not
    invaded, a corporation, at the time defendant corporation
    was organized and before Act No. 46, Pub. Acts 1915 (3
    Comp. Laws 1915, § 11945 *et seq.*), was passed, might dis-
    pose of its stock at such price as it and the purchaser
    might agree upon.

6. SAME—FRAUD—CONTRACTS—BANKRUPTCY ACT, AMENDMENT TO.
    The trustee in bankruptcy, suing in right of the bankrupt,
    and not basing his right upon a fraudulent disposition of
    property, which right could be exercised only for the bene-

fit of creditors, and not basing his right on the amendment of 1910 to section 47 of the bankruptcy law (36 U. S. Stat. 838, 840) is bound by the contracts of the bankrupt, and could not recover in right of the bankrupt unless the bankrupt could recover.

7. SAME—CORPORATIONS—FRAUD—CREDITORS' RIGHTS.

Where a corporation has disposed of its shares of stock at a grossly inadequate price, or without consideration, an action may be brought by the trustee in bankruptcy for the benefit of those creditors .only who have extended credit in reliance upon the capital stock of the corporation.

8. SAME—TRUSTS—STOCK AND STOCKHOLDERS—FRAUD—CORPORATE STOCK—CONSTRUCTIVE FRAUD.

The theory upon which the action may be maintained by a trustee in bankruptcy against a stockholder who has paid an agreed price for stock in a corporation, is that the capital stock of a corporation is a trust fund for the benefit of its creditors, and its officers may not fraudulently convey it away, and that, if so fraudulently conveyed away, the contract may be vacated and the stock may be recovered for, and must be based upon the following premises: (1) That the capital stock is the property of the corporation, a trust fund for the benefit of the corporation and its creditors; (2) that creditors have a right to rely and do rely on such capital stock in extending credit to the corporation; and (3) that in disregard of the rights of such creditors the corporation has disposed of its capital stock either in actual fraud, or for such inadequate consideration as to work a constructive fraud.

9. SAME—BANKRUPTCY ACT, AMENDMENT TO—RIGHTS AND REMEDIES OF CREDITORS.

In pursuing such trust fund the trustee's right must come from the amendment to the bankruptcy act, rather than from the original act, and he has not only the rights of a creditor "armed with process," but also the remedies of such a creditor.

10. SAME—EQUITY.

Since some of the creditors may not be entitled to recover, and under the broad power of a court of equity what creditors, if any, are entitled to participate may be determined, what persons, if any, are liable to account may be decreed, and sufficient to liquidate the claims of those entitled to

202—Mich.—25.

participate, and no more, may be awarded against such persons as may be liable, the case will be remanded to the equity court to be there disposed of.

11. SAME—FRAUD—EVIDENCE—ADMISSIBILITY—NOTICE—BURDEN OF PROOF.

The court below was in error in excluding testimony as to the knowledge of the creditors of the fraudulent transfer, since only those who extended credit in reliance upon the capital stock are entitled to relief; the burden of proof being upon the creditors to prove their right to call upon the stockholders.

12. SAME—FRAUD—NOTICE—RIGHT TO RECOVER.

Those creditors who participated in a transaction involving the transfer of corporate stock at fraudulent valuation, and who dealt with the corporation with actual knowledge of what its assets were, may not recover from the stockholders upon the theory that they extended credit in reliance upon the capital stock and its being fully paid.

OSTRANDER, C. J., and STEERE and KUHN, JJ., concurring in the order transferring the case to the equity side of the court, but reserving opinion as to defendant's liability in equity.

Error to Iron; Flannigan, J. Submitted April 2, 1918. (Docket No. 14.) Decided July 18, 1918.

Assumpsit by Joseph S. Courtney, trustee in bankruptcy of the Groveland Mining Company, against George W. Youngs for an assessment upon certain shares of corporate stock. Judgment for plaintiff. Defendant brings error. Reversed, and remanded to the equity side of the court.

*A. F. Dixon,* for appellant.

*John E. Tracy,* for appellee.

The Groveland Mining Company filed its articles of association in the office of the secretary of State August 5, 1907. By such articles it appears that the following named persons were its incorporators and received the number of shares of stock stated:

George W. Youngs (Defendant)............2,026 shares
J. H. Bartow..............................2,026 shares
D. T. Croxton.............................2,665 shares
W. H. Becker..............................1,280 shares
Frank W. Youngs (son of Defendant)......    3 shares

Defendant is a mining man of a number of years' experience. Before the organization of the Groveland Company he was the manager of the Huron Mining Company. Captain Bartow was the manager of the Lake Erie Ore Company of Cleveland and was also a stockholder in the Huron Company. The Lake Erie Ore Company is a selling agency engaged in the business of selling ores for mining companies. It was the sales agent of the Huron Company. In conducting its business it makes advances to companies and is the principal creditor of the Groveland Company. Mr. Croxton, a mining engineer, was the president of the Cleveland Furnace Company, engaged in the pig iron business. He also was interested in the Huron, and has other interests. He was for some years the chemist for the Penn Iron & Coal Company. Mr. Becker was in the vessel business. Some time after the organization of the Groveland Company he transferred his shares in the Groveland Company to the Lake Erie Ore Company.

The circumstances leading up to the organization of the Groveland Company were these: Captain Bartow wrote defendant requesting him to look up a low grade, low phosphorus mining proposition, saying that such a property could be used in connection with the Huron, which was very high in phosphorus. Defendant procured an option on the property in question, which was said to run 47 per cent. iron with a low percentage of phosphorus. The option was procured without expense. The mine had been unsuccessfully worked by two preceding companies, the cause of the failures being in dispute. Upwards of $100,000 had been expended in development and operation prior

to the time the option was obtained. The parties who became the incorporators of the Groveland Company furnished, either in cash or notes, the money to unwater the property and install machinery. There is testimony that this amounted to $13,000. The articles of association recite that no cash had been paid in on the capital stock, but that the property conveyed to the corporation consisted of the option which was valued at $200,000. It is undisputed that Captain Bartow wanted to incorporate the company for $500,-000 but that defendant insisted that it should be incorporated for $200,000, which figure was the one finally agreed upon.

The company was unsuccessful. It did not produce a large amount of ore; the ore was said to be refractory and customers who purchased did not renew their orders. In October, 1913, the company was adjudicated a bankrupt and plaintiff was elected and qualified as trustee. Its debts aggregate substantially $140,000, of which $117,260.57 is to the Lake Erie Ore Company. On April 28, 1914, the referee in bankruptcy entered an order, pursuant to a petition filed in the bankruptcy proceedings, ordering defendant to pay $17 per share on each share of 1,497 shares of stock held by him within 10 days from the date of the order, and authorizing and directing the trustee to bring suit unless the same was paid. This order was entered without personal service on defendant, the order to show cause having been sent him by registered mail, he not appearing. The order, however, contained the following provision:

"This order is without prejudice to the right of said George W. Youngs to claim upon said suit, if brought against him by said trustee, that the stock is fully paid, or to make any other defenses to said suit that he may desire, it being not hereby intended to conclude him in any respect, except as to the fact that

the court has here regularly performed the administrative act of making this call."

Defendant having failed to pay, this action at law was instituted, resulting in a judgment for plaintiff in the sum of $11,751.55, to review which this writ of error was sued out.

FELLOWS, J. (*after stating the facts*). We have recently had occasion to consider a case brought for the same purpose as is the instant case, and in which some of the questions here involved were determined. *Grand Rapids Trust Co.* v. *Nichols*, 199 Mich. 126; we shall have occasion to refer to that case as we proceed.

It is insisted that the order of the referee above mentioned, having been made without personal service on defendant, is void and of no effect as to this defendant, and for that reason this or any other suit has not been validly authorized and may not be maintained. The authorities upon this question are not in harmony; the United States circuit court of appeals of this circuit having set aside a somewhat similar order made upon similar notice by mail, in a direct proceeding for that purpose. *In re Haley*, 158 Fed. 74. We are impressed, however, from an examination of the authorities, that the making of such an order by the referee in a case of this character without personal service is recognized as the proper practice; that it is determinative of the amount of the indebtedness of the bankrupt and of the amount necessary, in addition to the other assets, to liquidate such indebtedness, but that it is not *res adjudicata* of any defenses personal to the defendant; that while it authorizes the bringing of a suit in the proper forum, it does not foreclose the defendant from such defenses as he may see fit to make.

The statute of limitations is pleaded, although not strenuously insisted upon. It is not available. The

statute did not begin to run until the order of the referee. *Scovill* v. *Thayer*, 105 U. S. 143.

Before proceeding further it is well that we consider the character of this litigation, the theory upon which the case was tried, and the theory under which defendant may be called upon to respond. This is necessary in order that we determine what rights the trustee in bankruptcy possesses, and under which provision of the bankruptcy law he seeks to exercise such rights, in order that we may determine the proper forum under our system of procedure in which such rights may be enforced. His powers and rights are prescribed by the act of congress and are very broad. He has the rights of the bankrupt; in addition he has the right not possessed by the bankrupt, that of pursuing property conveyed by the bankrupt in fraud of creditors, and by the recent amendment he has the rights of a creditor armed with process. In order to determine the proper forum in which he may exercise these respective rights, it is important that we understand which of these rights he is here seeking to enforce. For that purpose we must consider the nature of the rights here asserted in order to judge the remedy adaptable.

This is not a suit to recover on a statutory liability, nor, strictly speaking, is it an action to recover an unpaid subscription; nor is it an action brought to recover property conveyed by the bankrupt in fraud of creditors and which conveyance of necessity operates as a fraud upon *all* creditors, and the recovery inures to the benefit of *all* creditors. As we shall presently see, the recovery here does not inure to the benefit of *all* the creditors but only to those who have extended credit in reliance upon the capital stock of the corporation. The case was tried and submitted to the jury in the court below upon the claim of the plaintiff that the Groveland Mining Company, acting

through its officers and promoters, in fraud of the rights of creditors, had disposed of the property of the corporation, *i. e.*, its shares of stock, at a grossly inadequate price, or without consideration; and that under such circumstances the contract for sale and sale of such stock was void, rendering the stockholders liable for the stock fraudulently obtained by them. Where creditors' and other stockholders' rights are not invaded, a corporation, at the time this corporation was organized and before Act No. 46, Pub. Acts 1915 (3 Comp. Laws 1915, § 11945 *et seq.*), was passed, might dispose of its stock at such figure or for such property as it and the prospective stockholder might agree upon. *Young* v. *Erie Iron Co.*, 65 Mich. 111; *Rickerson Roller Mill Co.* v. *Machine Co.*, 75 Fed. 554; *Old Dominion Copper Co.* v. *Lewisohn*, 210 U. S. 206; *Coit* v. *Gold Amalgamating Co.*, 119 U. S. 343. In the last cited case the court recognized the right of creditors, who had extended credit in the belief that the stock was fully paid, to proceed against the stockholders in case property was fraudulently exchanged for stock, but at the same time pointed out the distinction between such a case and one brought for unpaid subscriptions, the court saying:

"The case is very different from that in which subscriptions to stock are payable in cash, and where only a part of the installments has been paid. In that case there is still a debt due to the corporation, which, if it become insolvent, may be sequestered in equity by the creditors, as a trust fund liable to the payment of their debts. But where full paid stock is issued for property received, there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account. A gross and obvious overvaluation of property would be strong evidence of fraud."

In the recent case of *Decke* v. *Baker*, 201 Mich. 608, Decke, a stockholder, sought to have set aside an issue

of stock to Baker for his services; the company was made a defendant and filed a cross-bill also seeking to set aside such issue of stock to Baker. Mr. Justice Stone, speaking for the court, said:

"If the facts were conceded to be as claimed by the cross-plaintiff, Baker Clay Company, there would be no ground for equitable relief as to it, but the parties would be left in the position in which they have placed themselves. *Walhier* v. *Weber*, 142 Mich. 322, 325; *Benson* v. *Bawden*, 149 Mich. 584; 4 Thompson on Corporations (2d Ed.), § 3916; 9 Cyc. p. 546."

The trustee in bankruptcy, suing in right of the bankrupt, and not basing his right upon a fraudulent disposition of property, which right could be exercised only for the benefit of creditors, and not basing his right on the amendment to the bankruptcy law in 1910 referred to in the *Nichols Case*, is bound by the contracts of the bankrupt, and could not recover in right of the bankrupt, unless the bankrupt could recover. *Wasey* v. *Whitcomb*, 167 Mich. 58; *Marine Savings Bank* v. *Norton*, 160 Mich. 614; *York Manfg. Co.* v. *Cassell*, 201 U. S. 344; *Zartman* v. *National Bank*, 216 U. S. 134. The contract of the bankrupt must be gotten rid of, set aside, before the trustee can call upon the stockholder for anything other than his contract with the bankrupt required. This may be done in case of fraud upon the rights of creditors in a proceeding suitable for that purpose.

The theory upon which the action may be maintained by a trustee in bankruptcy against a stockholder who has paid an agreed price for stock in a corporation, is that the capital stock of a corporation is a trust fund for the benefit of its creditors, and its officers may not fraudulently convey it away, and that, if so fraudulently conveyed away, the fraudulent contract may be vacated and the property, *i. e.*, the capital stock, may be recovered for. In a proceeding

of this character the plaintiff's (trustee's) right to recover is and must be based on the following premises: (1) That the capital stock of a corporation is the property of the corporation, a trust fund for the benefit of the corporation and its creditors; (2) that creditors have a right to rely and do rely on such capital stock in extending credit to the corporation; and (3) that in disregard of the rights of such creditors the corporation has disposed of its capital stock either in actual fraud, or for such an inadequate consideration as to work a constructive fraud.

If an individual creditor were seeking relief in the courts of the State upon the theory here advanced by the plaintiff, he would be required to proceed by creditors' bills, having taken the necessary preliminary steps.

As stated, the theory upon which this suit may be maintained must be the trust fund theory; it must be that a trust fund existed, and that the trustee in bankruptcy is pursuing that trust fund for the benefit of such creditors (not necessarily all creditors) as may establish their right to participate. In pursuing this trust fund, therefore, the trustee's right must come from the amendment to the bankruptcy law, to which we shall now refer, rather than his right under the original act.

The bill in the case of *Grand Rapids Trust Co.* v. *Nichols, supra,* was framed upon the theory here discussed, and we there sustained the right of the trustee to file such a bill on the ground that the amendment of 1910 to section 47 of the bankruptcy law (36 U. S. Stat. 838, 840), gave to the trustee all the rights, remedies, and power of a judgment creditor holding an execution duly returned unsatisfied; that he had the right to pursue property transferred by the bankrupt in fraud of his creditors; that he had the rights of a creditor "armed with process"; and that when

pursuing such rights he could maintain a bill in the nature of a creditor's bill. It will be noted that the amendment above referred to not only gives to the trustee the rights of a creditor "armed with process," but also gives him the *remedies* of such a creditor.

When this plaintiff sought to have set aside the contract between the company and the defendant, by which the option was transferred to the company in consideration of the issuance of stock, upon the ground that such transaction was in fraud of creditors and their rights, and that he had the right to follow the trust fund, he was exercising a right given him by the amendment above referred to, the right of a judgment creditor with an execution returned unsatisfied, the right under our practice to file a creditor's bill. We so held in the *Nichols Case* and we are not persuaded that an incorrect result was there reached. We there pointed out that in an equitable proceeding the court may carefully guard the interests of each and every party. It was admitted in that case that some of the creditors would not be entitled to participate. It is quite probable that such is the case here, and that it will always be the case where the trustee is proceeding against stockholders who have exchanged property for stock. Under the broad power of a court of equity, what creditors, if any, are entitled to participate may be determined; what persons, if any, are liable to account may be decreed; sufficient to liquidate the claims of those entitled to participate, and no more, may be awarded against such persons as may be liable. While the number of original stockholders here are few, cases will arise where they are numerous; a multiplicity of suits should be avoided. One bill in which all are made parties will suffice to determine the rights and liabilities of all.

We repeat that we are not here dealing with the collection of an unpaid stock subscription, strictly

speaking; nor with the enforcement of a stockholder's statutory liability; nor with a proceeding where the recovery of necessity inures to the benefit of all creditors; but considering solely the case before us, that of a bankrupt corporation, the theory upon which it was tried and the only theory upon which recovery may be had, we hold that in such a proceeding the trustee is exercising the rights given him under the amendment to section 47, may pursue the remedies provided in our system of procedure incident to such rights, that the relief under our practice must be had in equity, and that this suit on the law side of the court may not be maintained.

As we have concluded that the case should be remanded for transfer to the equity side of the court to be there disposed of, it becomes necessary to consider one further assignment of error. We have adverted to the fact that only those creditors who extend credit in reliance upon the capital stock are entitled to relief in proceedings of this character. On the trial defendant sought to show knowledge of the Lake Erie Ore Company of the transaction. This he was not permitted to do. In this there was error. Those creditors who participate in a transaction involving the transfer of corporate property at fraudulent valuation, who deal with the company with actual knowledge of what its assets are, and who extend credit knowing fully that the capital stock has been exchanged for property, and know for what property it was exchanged, cannot, when the venture proves disastrous, call upon stockholders upon the theory that they extended credit in reliance upon the capital stock and its being fully paid. *Ten Eyck* v. *Railroad Co.*, 114 Mich. 494; *Rickerson Roller-Mills Co.* v. *Machine Co.*, *supra.* In the last cited case it was said by Judge Lurton:

"When credit is extended to a corporation with full knowledge of special arrangements between the cor-

poration and purchasers of the stock whereby non-assessable stock has been issued for less than its par value, it cannot be said that such credit has been extended in reliance that the stock has been fully paid, or is subject to further calls by the corporation."

It will be competent for the defendant to show the relation, dealings, and knowledge of this creditor with the affairs of the bankrupt company in order that the court may determine whether this creditor dealt with and extended credit to the company in reliance upon the capital stock. This will, of course, be true of other creditors; indeed, the burden will be upon such creditors to prove their right to call upon the stockholders.

It follows from what has been said that the judgment must be reversed and the case remanded with instructions to transfer it to the equity side of the court, pursuant to section 2, chapter 11, Act No. 314, Pub. Acts 1915 (3 Comp. Laws 1915, § 12351). Defendant will recover costs of this court.

BIRD, MOORE, BROOKE, and STONE, JJ., concurred with FELLOWS, J.

OSTRANDER, C. J. I concur in an order transferring the case to the equity side of the court, thinking that there, if anywhere, can the relief claimed be granted. Upon the point of defendant's liability in equity I reserve opinion.

STEERE and KUHN, JJ., concurred with OSTRANDER, C. J.