BROOKS *v.* BUYS.

CORPORATIONS—SUBSCRIPTION TO STOCK—TRANSFER OF PROPERTY— CONSTRUCTIVE FRAUD—BANKRUPTCY—CREDITORS.

> Where defendants, with others, organized a corporation and agreed to convey certain real estate to the corporation in payment for stock, but failed to do so, and later the stock and assets of the corporation, not including said real estate, were sold to other parties and the debts to date paid, defendants contributing $4,200 for such purpose and retaining title to the real estate, which was subsequently sold and the money deposited pending determination of ownership, said fund is *held,* to be the property of the corporation, which is now bankrupt, subject to the allowance therefrom to defendants of the amount advanced by them to the corporation at the time of its sale; the acts of defendants in failing to convey said real estate to the corporation amounting to constructive fraud upon the creditors.

Appeal from Allegan; Cross (Orien S.), J. Submitted June 16, 1921. (Docket No. 63.) Decided February 8, 1922.

Bill by Walter H. Brooks, trustee in bankruptcy of the Moline Milling Company, against John Buys and others to reach funds transferred in fraud of creditors. From a decree for plaintiff, certain defendants appeal. Modified and affirmed.

*Fred P. Geib*, for plaintiff.

*Elvin Swarthout*, for appellants.

WIEST, J. Defendants George Vander Meer and John Buys, as copartners, owned a mill and certain personal property in connection therewith, and in April, 1915, they, together with Sybrand Vander Meer, organized the Moline Milling Company, a corporation.

In the articles of association, duly executed and filed, they set the capital stock at $20,000, of which $15,000 was subscribed by them, and alleged that:

"The amount of said stock actually paid in at the date hereof is the sum of fifteen thousand dollars, of which amount fifteen thousand dollars has been paid in property, an itemized description of which, with the valuation at which each item is taken is as follows, viz:

"The real estate known as lots Nos. two (2) and three (3) of block No. eleven (11) of the village of Moline, Allegan county, Michigan, together with the flour mill and buildings on said premises and machinery attached to said property of the value of eleven thousand six hundred nineteen dollars; also the entire stock of flour, feed, hay, grain, fuel and building material not on said premises, together with the personal property and fixtures used in connection with said business and formerly owned by George Vander Meer and John Buys, copartners, all of which said personal property, stock in trade and fixtures is of the value of three thousand three hundred eighty-one dollars."

The incorporation was under the provisions of Act No. 232, Pub. Acts 1903 (chap. 175, 2 Comp. Laws 1915). This statute required that the amount of capital stock subscribed should be set forth and should not be less than 50 per cent. of the authorized capital stock; also that the amount of capital stock paid in at the time of executing the articles, and where payment was made in property, an itemized description of the property with the valuation at which it was taken should be given.

The three incorporators made and attached to the articles of association an affidavit in which they stated that:

"They know the property described in article seven of such articles of association and taken in payment for capital stock, and that the same has been actually transferred to such corporation, and further say that said property is of the actual value of fifteen thousand dollars."

No conveyance of the real estate was ever made by them to the corporation, but the corporation used the same, and in the annual reports filed listed it as the property of the corporation. They conducted the business of the corporation until April, 1918, when they sold their holdings therein to George, Roelof, Frances and James Weurding and John Luidens, and turned over to them their certificates or shares of stock assigned in blank, and received two notes signed by the purchasers; one for $5,000 and the other for $4,098.81. The certificates of stock so assigned in blank were marked as cancelled by the new secretary in April, 1918, and new certificates issued for 300 shares each to the Weurdings and Mr. Luidens. At the same time George Vander Meer and Mr. Buys entered into a land contract for the sale of the above mentioned real estate together with the machinery and equipment attached and used in connection with the

buildings to the Weurdings and Mr. Luidens at a price of $13,000. This land contract was not recorded until January 6, 1920.

The creditors of the corporation up to the time of such sale were paid in full by the Vander Meers and Mr. Buys. The corporation became insolvent and closed its doors January 3, 1920, and was adjudged bankrupt on the petition of creditors March 23, 1920, and plaintiff was elected and qualified as trustee. Schedules show liabilities of more than $18,000 and assets in the trustee's hands amounting to about $1,600.

When the trustee went to take possession of the real estate he found a notice on the door of the mill reading as follows:

"We have seized this mill property real estate under our rights as owners and land contract vendors.

"We have resumed and assumed possession thereof.
"Dated January 17, 1920.
                    "GEORGE VANDER MEER,
                    "JOHN BUYS,
                                    "Owners."

September 21, 1920, the parties, by their attorneys, stipulated that the property be sold, and it was sold and brought $9,571.64, which, by agreement, has been deposited in a bank to await the determination of this suit.

The bill herein was filed by the trustee in bankruptcy on May 25, 1920, and is broad enough to bring the case within our holding in *Courtney* v. *Youngs,* 202 Mich. 384. We feel it unnecessary to set out the averments in the bill and content ourselves with stating that it alleges the acts above mentioned, and claims the same constituted a fraud upon the corporation and the rights of creditors. Defendants deny the averments of fraud and claim their acts in the premises were in good faith and such as they had a right to do.

A statement of some elementary principles of law will aid in the determination of the issues here involved.

"In contemplation of law, a corporation is a legal person having an existence wholly distinct and separate from that of its members." Hamilton, General Business Corporations, § 2.

"The business corporation is born a trustee. It holds its capital stock—its very 'life blood'—as a trust fund for its creditors." *Id.* § 4, citing cases.

The capital stock of a corporation is the property of the corporation and constitutes a trust fund for the benefit of the corporation and its creditors. Creditors of the corporation have a right to rely, in extending credit, upon the public record of corporate organization and action, including the representation therein of the amount of the capital stock and the money or property paid in for stock. It is clear that the Vander Meers and Mr. Buys took the capital stock upon the express agreement and representation that the property mentioned should pay and had paid for the same, knowing that no such thing had been done, and this constituted a constructive fraud, to say the least, upon the corporation, and plaintiff, as trustee, has a right to recover from such original stockholders the value they agreed to pay therefor and have never paid. The circuit judge found that the real estate belonged to the corporation and granted plaintiff relief.

We have heard the case *de novo*, and while we cannot hold that title to the real estate vested in the corporation, we do find that the acts of defendants Vander Meer and Mr. Buys worked a constructive fraud upon the corporation to the injury of its creditors and that the dealings between them and the purchasers of their stock, including the sale of the real estate on land contract, does not in any way estop

the plaintiff, standing in the shoes of the corporation, from recovering for the creditors what the defendants agreed to pay and certified they had paid for their stock.

. The sale of the real estate has simplified things and the fund on deposit must go to the corporation just as it was agreed the property it is the avails of should go. The law upon the subject is so well stated in *Courtney v. Youngs, supra,* and cases there cited, that we feel there is no occasion to repeat the plain principles there set forth.

The Vander Meers and Mr. Buys contend that:

"The liability to respond for unpaid subscriptions attaches to him who owns the stock at the time the debt forming the basis of the demand was contracted, and not the original owner, provided there was no design to defraud subsequent creditors involved in the sale or transfer of the stock."

Having in mind the facts in this case we answer this contention in the language of Mr. Justice GRANT in *McBryan* v. *Universal Elevator Co.,* 130 Mich. 111:

"The question is, Can original incorporators make a false statement as to the amount of capital stock actually paid in, and escape liability for such false representations, immediately after executing the articles of association, by transferring their stock to other parties? The wrong was done by the original incorporators in making a false statement as to the amount of stock actually paid in. The public, and creditors dealing with the corporation, had the right to rely upon this statement as true. * * * It would be unjust to visit the sins of the original incorporators upon subsequent stockholders who purchased in good faith. It would be a disgrace to the law if creditors, dealing with the corporation in reliance upon these statements, which they examine in the public offices, where they are on file, had no remedy. Justice and good morals require that they who make such false statements, whether they make them intentionally or, as in this case, recklessly,

should respond in damages therefor.   The law does not permit them to evade this liability by a transfer of their stock."

No case just like the one at bar has been called to our attention, but the principles governing here are well stated in *Park* v. *Rich* (Tex.), 212 S. W. 947; *Johnson* v. *Canfield-Swigart Co.*, 211 Ill. App. 423.

We adhere to the general rule that stockholders are liable on unpaid subscription calls to pay creditors only for debts contracted while they were stockholders; but original stockholders and incorporators who take their stock for property agreed to be conveyed to the corporation, and who do not convey and falsely certify that they have, and thereby make public record of the amount of capital stock actually paid in by them, will not be permitted to invoke the general rule above stated as a means of avoiding their liability to creditors who became such after a transfer of such stock without actual notice impeaching the solemn representation of record.

Defendants appear to have been of the impression that they could do with the corporation and the capital stock what they liked, provided they satisfied the creditors at the time of the sale of their stock.   The fallacy of this is apparent upon a consideration of the statute under which the corporation was organized and the fact that the stock they got without paying therefor was sold for a consideration to the purchasers thereof and not surrendered by them to the corporation at all, and, while canceled, was the basis for issuance of stock merely to take its place,   and   the $11,619 it was certified and sworn to by them as the amount they paid therefor by conveyance of real estate to the corporation was mere fiction.   The dealings between the Vander Meers and Mr. Buys and the purchasers of their stock in no way cut off the rights of plaintiff, as trustee, to bring to this corporation

payment for the stock so taken by the original incorporators.

After the transfer of the stock defendants Vander Meer and Mr. Buys borrowed money from defendant Van Haitsma and pledged the land contract as security, and it is urged that Van Haitsma should be protected. Defendants are financially responsible and should pay their debt to Van Haitsma, and no good reason is made to appear for lessening the rights of the creditors in behalf of Van Haitsma.

Defendants claim that the corporation was never legally organized because one of the incorporators was a minor. They cannot be heard to make any such claim in this suit.

The fund arising from the sale of the real estate, being less than the sum they certified they valued the real estate in payment for the capital stock they took, belongs to the corporation in equity and good conscience for the payment of creditors dealing with the corporation without knowledge of the falsity of the public record prepared and filed by defendants.

For the reasons here stated the decree granted below should be affirmed, with costs against appealing defendants.

STONE, J., concurred with WIEST, J.

CLARK, J. I do not concur in the opinion of Mr. Justice WIEST. When Vander Meer and Buys organized the Moline Milling Company, they stated in the articles of association and in the affidavit therewith that in payment for shares certain real estate which they had owned had been conveyed to the corporation. In the annual reports filed by them as officers of the corporation the real estate was treated as corporate property, and during their management the corporation had full use and benefit of the same. But they neglected to convey it to the corporation. Vander

Meer and Buys were the officers, directors and stockholders. Some shares had been issued to Vander Meer's son, Sybrand, but they were owned and controlled by the father, and the son was in France during the time here in question.

Vander Meer and Buys wanted to sell out. The Weurdings and one Luidens, hereinafter called the Weurdings, wanted to buy, but were unable to pay cash, so the parties, without counsel, agreed upon this plan: All creditors of the corporation were to be paid in full by Vander Meer and Buys who were to withdraw, and have title to, the real estate. The shares were to be transferred to the Weurdings at book value, less the real estate, and the paper of the Weurdings was to be taken for the transfer. Then Vander Meer and Buys were to sell the real estate on a land contract, with deferred payments, to the corporation. The agreement was carried out. To pay the creditors in full Vander Meer and Buys pledged the land contract to defendant Van Haitsma to secure a loan of $4,200, which sum was used to pay the creditors. Under the Weurding management the corporation soon became bankrupt.

The trustee began this suit, which, so far as defendants Vander Meer and Buys are concerned, seeks to have the said real estate decreed to be the property of the bankrupt corporation to be applied to the payment of creditors, all of whom are subsequent to the transfer to the Weurdings. By consent of all parties the real estate was sold and the fund arising from the sale, $9,751.64, is held by the court in lieu thereof. The decree gives this fund to the trustee, gives Van Haitsma nothing for his loan, and gives to Vander Meer and Buys no credit for the $4,200 paid to creditors.

The case of *Courtney* v. *Youngs*, 202 Mich. 384, is not controlling here, for the trustee seeks merely to

acquire by decree legal title to real estate to which he asserts he now has equitable title. When the transfer to the Weurdings was made the real estate, equitably, belonged to the corporation. But it is urged that when such transfer was made it does not appear that there was a resolution authorizing a conveyance in writing under seal of the real estate to Vander Meer and Buys or that such conveyance was made. But the corporation did not have the legal title to the real estate, and it is sufficient to say that Vander Meer and Buys took this property from the corporation. Equitably their action in withdrawing this real estate from the corporate assets was in effect a dividend or distribution to stockholders of capital assets. But what amount was so distributed? Not $9,751.64, but that amount less $4,200 paid to creditors or the sum of $5,551.64. In no event should a decree pass against Vander Meer and Buys requiring them to pay again to the trustee the $4,200 which they have already paid to creditors of the corporation. 14A C. J. p. 188; 26 L. R. A. (N. S.) 268.

Nor can decree be entered against them for the $5,551.64 unless it can be said that the withdrawal of such amount from the capital was a fraud upon the subsequent creditors. There is no claim or evidence of intent to defraud. The parties acted in good faith. But was there constructive fraud?

The authorities are not in harmony upon this question, but we think our own decisions support this rule:

"Accordingly, a dividend paid wholly or partly from the capital stock may be illegal, and may subject the corporation and the stockholders to serious liability. Hence the rule has been firmly established that, where dividends are paid in whole or in part out of capital stock, corporate creditors, being such when the dividend was declared, or becoming such at any subsequent time, may, to the extent of their claims, if any such claims are not otherwise paid, compel the stock-

holders to whom the dividend has been paid to refund whatever portion of the dividend was taken out of the capital stock." 2 Cook on Corporations (7th Ed.), p. 1614.

This rule is subject to the statute of limitations. See *Detroit Trust Co.* v. *Goodrich,* 175 Mich. 168 (Ann. Cas. 1915A, 821). See, also, *Clark* v. *E. C. Clark Machine Co.,* 151 Mich. 416, and cases there cited; *American Steel & Wire Co.* v. *Eddy,* 130 Mich. 266, and 138 Mich. 403; 26 L. R. A. (N. S.) 267; 5 L. R. A. (N. S.) 520; 14A C. J. p. 180.

It is said in *Detroit Trust Co.* v. *Goodrich, supra:*

"We think it is settled doctrine that the good faith of the corporation in paying dividends in impairment of capital or that of stockholders in receiving such dividends is no defense to an action for their recovery."

This distribution of capital assets amounted to a fraud upon the subsequent creditors of the corporation. By the withdrawal of the said sum of $5,551.64, its authorized paid up capital stock was impaired to that extent and the claims of creditors are in excess of the amount.

The decree will be modified to allow from the fund held by the court to Van Haitsma or to Vander Meer and Buys, as their interests may appear and be determined by the trial court, the said sum of $4,200. The decree so modified is affirmed. Defendants Vander Meer and Buys will recover against plaintiff the costs of this court.

BIRD, SHARPE, and MOORE, JJ., concurred with CLARK, J

FELLOWS, C. J. I agree with the reasoning of the opinion of Mr. Justice WIEST, but I am persuaded that inasmuch as Vander Meer and Buys advanced to the

corporation $4,200 which they borrowed from Van Haitsma, and which sum was used by the corporation to pay its then existing debts, they should be credited with this sum to discharge *pro tanto* their liability to the corporation.   For this reason I agree with Mr. Justice CLARK as to the form the decree should take.

STEERE, J., concurred with FELLOWS, C. J.